## HAGGART *v.* RANNEY.

### Opinion delivered December 17, 1904.

1. LAW AND EQUITY—TRANSFER.—Where the evidence shows that plaintiffs obtained possession of the land in controversy in an unlawful manner for the purpose of bringing suit in equity to cancel defendants' title, the suit was properly transferred to the law court. (Page 347.)

2. POWER—DERIVATION.—Where, by the terms of a will, the legal title to real estate is vested in the executor as a trustee *eo nomine,* with power to sell and convey, the power is vested in such executor as a trustee created by the terms of the will, and not as an officer created by the probate court. (Page 347.)

3. SAME—SURVIVORSHIP.—Where a power to sell and convey land is conferred upon several executors or trustees, it is held to continue in a single survivor, and may be exercised by him alone after the death of his co-executors or trustees, unless a contrary intent is manifest from the instrument creating the power. (Page 348.)

4. ANSWER—DENIAL OF INFORMATION—SUFFICIENCY.—Under Sandels & Hill's Digest, section 5722, providing that an answer shall contain "a denial of each allegation of the complaint controverted by the defendant, or of any knowledge or information thereof, sufficient to form a belief," and section 5761, providing that "every material allegation of a complaint not controverted by answer * * * must be taken as true," an allegation that the defendants "have no information sufficient to form a belief" as to certain allegations of the complaint, without also alleging a want of knowledge, is insufficient to put such allegations in issue. (Page 349.)

5. LIMITATION—TAX TITLES.—The two years statute of limitation as to tax titles contemplates possession under a tax deed, and not under a certificate of purchase merely. *Harvey v. Douglass,* 73 Ark. 221, followed. (Page 350.)

6. SAME—ADVERSE POSSESSION.—Where A and B owned contiguous tracts, and C entered into adverse possession of a part of A's land, under a deed purporting to convey both tracts, his actual possession of part of A's land will not give him constructive possession of B's land. (Page 352.)

Appeal from Craighead Circuit Court.

FELIX G. TAYLOR, Judge.

Reversed.

*N. W. Norton,* for appellants.

The cause was erroneously transferred. Sand. & H. Dig. §§ 5618, 5889; 55 S. W. 548; 32 S. W. 599. Plaintiffs' exceptions to the title of defendants should have been sustained. The possession of a mere squatter, who neither claims through any one else, nor on his own account, is the possession of the real owner; and the court erred in refusing the instructions prayed upon the point. 2 Blackw. Tax Tit. § 895. The two years statute does not run in favor of a purchaser at a tax sale until he gets his deed. 80 N. W. 37; Blackwell, Tax Tit. §§ 170, 227, 494; Cooley, Taxation, 352; 21 So. 812; 26 Ark. 48; 1 Doug. (Mich.) 276; 2 Blackw. Tax Tit. § 895; 27 Ia. 160; 68 Ala. 258. The possession of Farmer was that of a squatter only. Actual and adverse possession of one tract does not carry with it constructive possession of another distinct and vacant place. 64 N. W. 903; 27 S. E. 992; 42 Pac. 514; 38 S. W. 380; 37 Minn. 113; 72 N. W. 520. There must be good faith. Sedg. & W. Tr. of Tit. to Land, § 775; 95 Cal. 206; 20 N. J. L. 487; 51 Tex. 51; 4 Ga. 115; 48 Am. Dec. 210; 39 Ill. 428; 37 Miss. 163; 50 Mo. 536; 41 N. J. L. 527; 8 Pet. 253; 50 Ga. 629; 58 Ga. 427; 89 Ia. 338; 82 Pa. St. 98; 20 So. 443; 43 N. E. 361; 111 Ill. 82.

*J. D. Block* and *J. C. Hawthorne,* for appellants.

Under the statutes of Tennessee Speed was not clothed with power or authority to act as an executor or trustee by virtue of the will alone, until he qualified. Sess. Acts. 1813; 4 Yerg. 16; 2 Yerg. 298. This court will take judicial notice of the

laws of other States. Acts Ark. 1901, 164. Under the terms of the will, Speed, who was a joint executor, had no power to act alone in the making of the sale. 46 Miss. 462; 54 Mass. 220; 3 Cow. 651. The recital that he was the sole surviving executor is no proof of the fact. 4 Pet. 1; 20 N. W. 251; 8 Port. 529; 48 Ga. 329; 50 Cal. 503; 19 N. W. 247. There was no error in transferring the cause. Sand. & H. Dig. § 5618. As to what confers color of title, see: 34 Ark. 547; 60 Ark. 163; 40 Ark. 237; 60 Ark. 499; 80 Fed. 264. Actual possession of a portion of a tract, under claim of title to the whole, carries with it possession of the whole as included by the boundaries set out in the deeds. 1 Ark. 448; 38 Ark. 193; 85 Am. Dec. 103; 2 Dana, 149; 12 Johns. 453; 13 N. W. 82; 74 Am. Dec. 187; 52 Fed. 838; 12 Ark. 829; 20 Ark. 516; 66 Ark. 141; 74 S. W. 299. As to appellees' title by possession under the tax sale, see: 42 S. W. 900; 65 Ark. 305.

McCULLOCH, J. Appellants, Haggart and McMaster, commenced this suit in the chancery court against appellees, Ranney, Olney and others, claiming to be the owners and in possession of the land in controversy, section 26, township 16 north, range 7 east, and praying that the deeds held by appellees be cancelled as clouds upon their title, and that appellees be restrained from asserting title or right of possession to the land. Appellants claim title as follows: That a certificate of entry was issued by the State to one Fowlkes in 1855, who assigned to E. E. Clarke, and the land was patented to Clarke as such assignee on March 10, 1859, and on January 31, 1899, Speed, as executor and trustee under the last will of Clarke, conveyed to appellants. They show also a claim of title running back to a deed executed August 9, 1882, by the heirs of Fowlkes, which doubtless was made without knowledge of the assignment to Clarke, and under the belief that Fowlkes died still owning the land.

The appellees claimed title under tax sale made by the collector in 1887 for the taxes of 1886 to J. W. McKay (which sale is conceded to be void on account of excessive amount of cost included), who received a certificate of purchase, and assigned it to R. W. McKay; that this certificate was lost, and on June 19, 1899, after the commencement of this suit, the

clerk issued a deed to R. W. McKay upon his filing an affidavit showing the assignment and loss of the certificate; that J. W. McKay in 1888 or 1889 executed to R. W. McKay a quitclaim deed, conveying this land and also the adjoining section 23; and appellees claim under a deed from R. W. McKay purporting to convey sections 23 and 26. They pleaded the two years statute of limitation under the tax sale, and also the seven years statute.

Appellees filed their answer, setting forth their claim of title as aforesaid, and also a motion to transfer the cause to the law court and require the plaintiffs to proceed as in an action of ejectment, alleging that they (appellees) were in peaceable possession of the land, and that appellants had at the time or immediately before the commencement of the suit taken possession of a part of the land by force and violence and without right. After the proof was taken by deposition and the cause ready for trial the court, upon said motion of the defendants, found that "the plaintiffs surreptitiously attempted to obtain possession of the premises in controversy in order to enable them to bring suit in ths court," and ordered the transfer to the circuit court, to which order appellants excepted.

The cause was tried in the circuit court before the court sitting as a jury, and the court found for the defendants, and rendered judgment accordingly, and after the filing and overruling of their motion for new trial the plaintiffs appealed.

1. Appellants urge that the chancellor erred in ordering the transfer from the equity to the law court after the cause was ready for hearing. The grounds of motion to transfer set forth in the answer were not established from the face of the pleadings; therefore it was necessary for proof to be taken and presented to the court upon that issue. The proof in the record is sufficient to sustain the finding of the chancellor that the plaintiffs had obtained possession in an unlawful manner for the purpose of gaining vantage ground for bringing the suit in that court, and we think no error was committed in ordering the transfer.

2. The title of appellants is challenged here on the ground that Speed was not clothed with power as executor and trustee under the last will of E. E. Clarke to make the conveyance to appellants. The will, though executed in Tennessee by a citizen of

that State, is valid as a will of lands in Arkansas, and is controlled by the laws of this State. It contains many large bequests of money and devises of land, and has provisions as follows: "And my executor is hereby authorized and empowered to settle, adjust or compromise any claim for or against my estate, without submitting the same to legal adjudication, on such terms as he may deem for the best interest of my estate, as fully as if I were living and acting for myself." Also this: "I hereby authorize and empower my executor to sell and dispose of any portion of my estate, real or personal, proper or necessary to carry out and execute my will." Also: "In case of the death of my said executor and trustee, C. H. Clarke, before the full execution of this will, it is my wish that my son-in-law, Dr. A. A. Lawrence, and my friend, John K. Speed, act as such trustee and executors, with all the powers with which I have invested my son, C. B. Clarke, without bond," etc. Appellees insist that the conveyance by Speed is of no effect because it is not shown (1) that Speed ever qualified as executor, nor (2) that either his predecessor, C. B. Clarke, or co-trustee and executor, A. A. Lawrence, were dead at the time he executed the conveyance.

We think this position is not tenable. By the terms of the will the legal title to the real estate is vested in the executor as a trustee *eo nomine,* with power sufficient, from the language of the instrument, to sell and convey. The power is conferred, not upon the executor as an officer holding under authority of appointment by the court, but upon him as a trustee created by the terms of the will and deriving his power solely from that instrument. This is manifest from the plain language of the will.

When such power is conferred upon several executors or trustees, it is held to continue to a single survivor, and may be exercised by him alone after the death of his co-trustee, unless the contrary intent is manifest from the instrument creating the trust. 2 Beach, Trusts, § § 440, 451, 476; Underhill on Trusts, pp. 381-3; *Peters* v. *Beverly,* 10 Pet. 531; *Stewart* v. *Pettus,* 10 Mo. 755; *Robertson* v. *Gaines,* 2 Humph. 367; *Williams* v. *Otey,* 8 Humph. 563; *Parker* v. *Sears,* 117 Mass. 513; *Trustees* v. *Fisher,* 30 Me. 523.

No proof was taken to show the death of the original executor and trustee, C. B. Clarke, or Lawrence, one of his successors and co-trustee with Speed, except the recitals of the deed executed by Speed to appellants; and authorities are cited by counsel for appellees in support of the contention that such recitals are not admissible for the purpose of proving those facts. We do not find it necessary to pass ·upon the question of the admissibility or sufficiency of these recitals, as the deaths of C. B. Clarke and Lawrence, and the survivorship of Speed as such executor and trustee, are alleged in the complaint, and no issue is raised by the answer concerning these facts. The answer, as to these allegations, makes no specific denial, but merely states that the defendants "have no information sufficient to form a belief as to those matters." This is not sufficient to raise an issue, and put the plaintiff upon proof.

Section 5722, Sandels & Hill's Digest, provides as follows:

"The answer shall contain: * * * Second. A denial of each allegation of the complaint controverted by the defendant, or of any knowledge or information thereof, sufficient to form a belief."

Section 5761 provides that "every material allegation of a complaint, not controverted by the answer, * * * must be taken as true."

The express language, as well as the spirit, of our code of practice requires that allegations and denials must be specific, and that all allegations of a complaint are to be taken as true unless specifically denied in the manner pointed out by the statute. The denial may, under the statute, be in express terms, or may be simply by a statement that the defendant has no "knowledge or information sufficient to form a belief," which is equivalent to an express denial; but, in order for such statement to take the place of a positive denial, and put the allegations of the complaint in issue, both of the conditions must be stated. "It is not enough to allege a want of sufficient information to form a belief without also alleging a want of knowledge; and it is not enough to allege a want of knowledge without also alleging a want of information." Baylies, Code Pleading & Practice, p. 362; 2 Enc. Pl. & Pr. p. 809, and cases cited; *Chaflin v. Reese,* 54 Iowa, 544; *Wilson v. Smith,* 23 Iowa, 252;

*Woodcock* v. *Bostic,* 128 N. C. 243; *Mass. L. & T. Co.* v. *Twich-well* (N. D.), 75 N. W. 786; *People* v. *McCumber,* 15 How. Pr. 186; *Elton* v. *Markham,* 20 Barb. 343.

3. Appellees pleaded the two years' statute of limitation, and contend that the statute runs from the date of the tax sale or expiration of the time for redemption, and not from the date of the deed executed by the clerk.

This court recently held in the case of *Harvey* v. *Douglass**\* that this statute does not run under a certificate of purchase at tax sale, but that there must be possession for the statutory period under the deed. We now adhere to that conclusion, as we think that the Legislature meant by the words "by virtue of a purchase thereof at a tax sale," etc., a sale completed and consummated by the execution of a deed pursuant to the sale. This view is sustained by the language of our statute providing for the execution of tax deeds by the clerk (sec. 6624), as follows: "The deed shall be signed by the clerk of the county court, in his official capacity, * * * and, when substantially thus executed, shall vest in the purchaser all the right, title, interest and estate of the former owner in and to the lands conveyed, and also all the right, title and claim of the State and county thereto." See *Stephens* v. *Holmes,* 26 Ark. 48, where it is held that neither the legal nor equitable title of lands sold for nonpayment of taxes vests in the purchaser or holder of the certificate of purchase until the execution and delivery of the collector's deed. Nor does it conflict with the conclusion reached by this court in the case of *Worthen* v. *Fletcher,* 71 Ark. 386, where it was held that the certificate of purchase at a tax sale, accompanied by actual possession of a part of the tract described therein, is sufficient evidence of the title upon which the heirs of the purchaser could base a defense of adverse possession under the seven years' statute of limitation.; nor with the conclusion reached in *Crill* v. *Hudson,* 71 Ark. 390, that actual possession of part of a tract purchased at tax sale held under the certificate of purchase was sufficient to sustain a suit for trespass committed upon a part of the tract not in actual occupancy. In neither of those cases was the question of adverse possession under the two years' statute involved. The head-note to the latter case, wherein it is said that "a certificate of

*73 Ark. 221.

purchase at tax sale is sufficient color of title to support a claim of title based on two years adverse possession under Sandels & Hill's Digest, section 4819," is not borne out by the opinion of the court. That decision was right upon the facts, and correctly announced the law, so far as the right to maintain that suit was concerned. Possession of lands under an instrument insufficient in itself to support an action for the possession may be sufficient to protect the holder against an unauthorized invasion of his possession by a trespasser.

Another cogent reason, in our minds, for holding that the statute runs only while possession is held under the tax deed is found in the fact that at the time of the passage of the act in question, January 10, 1857, the law did not authorize the issuance of a certificate of purchase by the collector, but provided for an immediate execution of a tax deed to the purchaser (Gould's Dig. c. 148, § 111 *et seq.*): "Such deed shall vest in the grantee, his heirs and assigns, a good and valid title, both in law and equity," etc., and that the redemption therefrom could be made by the original owners within one year from the sale thereof upon payment of the taxes and costs and "one hundred per centum of the whole amount paid by such purchaser" and "the true value of any improvements made on such lands." (§ 143). Now, the state of the law regulating the method of conducting tax sales at the date of the passage of the act in question makes it plain that the Legislature meant by the use of the words "sheriff's or Auditor's sale for the nonpayment of taxes" a completed sale, for the law then required an immediate consummation of the sale by the execution of the deed, and the word "sale" was treated as synonymous, for the purposes of the act, with the word *deed*. The subsequent change in the law, postponing the time for execution of the tax deed until the expiration of the time allowed for redemption, did not alter the statute of limitation and dispense with the necessity of holding under a completed sale, *i. e.,* a deed.

A close analogy is found in the holding under a donation from the State, the statute using the word "donation deed." The law at that time authorized the issuance of a donation deed by the Auditor immediately upon the application therefor, and

provided for the making of the improvement by the donee thereafter and filing his certificate of proof (Gould's Dig., c. 101, § 4 *et seq.*) ; and the law was subsequently changed so as to provide, first, for issuance of a donation certificate, and afterwards of a deed upon proof being made of completion of improvements. This court held in *McCann* v. *Smith,* 65 Ark. 305, that the land must have been held for the requisite period under a donation deed, and not a certificate of donation, before the statute bar would attach. We think the same rule applies to tax sales by the collector. This view of the statute is in accord with the authorities in other States. 2 Blackwell on Tax Titles, § 895; *Eldridge* v. *Kuehl,* 27 Iowa, 160; *Jones* v. *Randle,* 68 Ala. 258; *Spalding* v. *Ellsworth,* 21 So. (Fla.), 812.

It follows that the court below erred in declaring the law that possession for two years held under the certificate of purchase was sufficient to bar the plaintiffs' right of action.

4. In support of this plea of adverse possession under the seven years' statute of limitation, appellees proved that in 1888 or 1889, about 10 years before the commencement of this action, two of their grantors entered into possession of section 23 under the quitclaim deed executed by J. W. McKay to R. W. McKay and the deed from the latter to Hadley & Olney, purporting to convey both sections 23 and 26, and that one Farmer, a "squatter" on section 23, who had cleared and put into cultivation a small portion of that section, then recognized their possession, and attorned to them as his landlords, and continued to hold possession as tenant of appellees up to the commencement of this suit. It is also shown that there were other "squatters" on section 26 who had cleared and put into cultivation small portions of the land, without, however, claiming possession adversely. These occupants were permitted to remain on the land unmolested and without any notice of appellees' claim of title until the year 1895, when they, too, attorned to appellees as their landlords, and continued to occupy the land as such tenants until shortly before the commencement of this suit. In other words, the proof established, we think, an actual occupancy of a part of section 23 by appellees through their tenant and agent, Farmer, from about the year 1889, and actual occupancy of a part of section 26 from April, 1895.

Appellees contend that their actual occupancy of a part of section 23 for the statutory period, under color of title describing both section 23 and 26, drew to it the constructive possession of the whole of both tracts, and that under the proof the statute bar was complete. The court below sustained them in that contention, and so declared the law. Was that ruling correct?

It is too well settled now by authority to admit of controversy that one who enters into actual possession of a portion of a tract of land, claiming title to the whole under an instrument describing and purporting to convey the entire tract, is not limited in his possession to the actual inclosure, but his actual possession of a part draws to it the constructive possession of the whole, and his possession is deemed to be coextensive with the boundaries described in his grant. Such a possession may ripen into title by limitation. *Pillow* v. *Roberts,* 12 Ark. 829; *Elliott* v. *Pearce,* 20 Ark. 508; *Wilson* v. *Spring,* 38 Ark. 181; *Crill* v. *Hudson,* 71 Ark. 390.

But this doctrine must be taken with the important exception that no such presumption will be indulged as to extension of boundaries so as to give constructive possession as against the true owner unless his boundaries have been invaded by actual possession and occupancy of a part of his land.

"The rightful owner is deemed to be in possession until he is ousted or disseized. Possession follows the title, in the absence of any actual possession adverse to it." *Woolfork* v. *Buckner,* 60 Ark. 163; *Ringo* v. *Woodruff,* 43 Ark. 469; *Bradley* v. *West,* 60 Mo. 33; *Clarke* v. *Courtney,* 5 Pet. 319; *Barrett* v. *Love,* 48 Iowa, 115; *Ellicott* v. *Pearl,* 10 Pet. 441; *Hunnicutt* v. *Peyton,* 102 U. S. 333.

To illustrate the distinction in this doctrine: if A under a deed describing a tract of 80 acres of land owned by B, but not in his actual possession, enters and holds actual possession of a part, claiming the whole, his possession will be deemed to include the entire tract to the limits of the boundaries described in his deed; but if C owns 40 acres of the land, and A has no actual possession of any of that part owned by C, his actual possession of a part of B's land will not draw to it the constructive possession of the tract owned by C, even though it be within the limits of the boundaries described in the deed.

S C—12

Constructive possession follows the title until there has been an invasion of this possession of the rightful owner by an actual occupancy of at least a part of the tract, and an actual occupancy of a part of a contiguous tract owned by another does not oust the constructive possession of the true owner, even though both tracts be described in the same instrument. There is nothing to put the true owner upon notice that his constructive possession is invaded until actual possession be taken of part of his land. He is not compelled to take notice of adverse occupancy of a contiguous tract owned by some one else. This distinction is pointedly, and, we think, correctly, made in *Turner* v. *Moore*, 81 Tex. 206, and followed in *Faison* v. *Primm*, 34 S. W. (Tex.) 834.

The possession of appellees was not aided or extended by the occupancy of a part of section 26 by the squatters, as their possession was not adverse to the true owner; and if it had been, appellees could not tack the possession of the squatters, who were mere trespassers, to their own for the purpose of making out possession for the statutory period.

The court erred in its declaration of the law on this question.

Reversed and remanded for a new trial.

HILL, C. J., absent and not participating.