## NORWOOD *v.* MAYO.

### Opinion delivered May 22, 1922.

1. TAXATION—ADVERSE POSSESSION UNDER TAX TITLE.—Under Crawford & Moses' Dig., § 6947, limiting the time of bringing an action to recover lands sold for taxes to two years, actual possession of land taken and held continuously for two years under a tax deed bars an action for recovery, though the sale is irregular or void for jurisdictional defects.

2. ADVERSE POSSESSION—SUFFICIENCY OF POSSESSION.—Where a person claiming cut-over land placed a tenant on the land who remained in possession eight months, and on his leaving another tenant took possession and remained some months, and then left, and the house was vacant for a month before another tenant took possession, and none of the tenants cultivated or inclosed the land, but only cut firewood, the possession was not of sufficient character to give title by adverse possession.

3. ADVERSE POSSESSION—NATURE OF POSSESSION.—In order to acquire title to woodland by adverse possession, there must be actual use of the land of such unequivocal character as reasonably to

indicate to the owner visiting the premises during the statutory period that such use and occupation indicate an appropriation of ownership in another.

Appeal from Craighead Chancery Court, Western District; *Archer Wheatley,* Chancellor; affirmed.

*Gautney, Caraway & Dudley,* for appellants.

A deed based on a void tax sale, on its face properly describing the land, and purporting to convey it to the purchaser, is color of title. 77 Ark. 324; 80 Ark. 82.

Where a purchaser of land at a tax sale goes into possession under a deed properly describing it, and continues in possession for more than two years, he acquires title to the land. 129 Ark. 270.

If the owner, having right of action for possession, fails to act for a period of two years, the title to the land should be quieted in the adverse holder. 83 Ark. 334; 76 Ark. 477; 60 Ark. 499; 60 Ark. 163; 66 Ark. 141; 59 Ark. 460; 23 L. R. A. (N. S.) 1102; 126 Ark. 86.

Appellant having actual possession of part of the land under his deed, even though the deed was void, the land being occupied, had constructive possession of the whole tract. 71 Ark. 117; 78 Ark. 99; 80 Ark. 82; 93 Ark. 30; 84 Ark. 140.

All actions to test the validity of the sale of lands delinquent for taxes shall be commenced within two years from date of sale. C. & M. Dig., sec. 10119; 1 R. C. L. 687; 2 C. J. 112.

Any visible or notorious acts which clearly evince an intention to claim possession is sufficient to establish a claim for adverse possession. Tiedeman on Real Property, 3 ed. sec. 495; 92 Ark. 321; 80 Ark. 82; 75 Ark. 593.

The tax is a charge upon the land itself, and when sold vests the title in the purchaser. C. & M. Digest, sec. 10025. This conveyance carries with it the interest of all other persons in the land. C. & M. Digest, sec. 10109; 84 Ark. 1; 123 U. S. 747; 31 L. ed. 309. It is the land that is sold for taxes, and not merely the interest or equity of the owner. 18 Ark. 423; 39 Ark. 315.

The appellant was entitled to a decree quieting his title under his tax deed, although the tax sale and deed based thereon were void. 76 Ark. 442; 76 Ark. 447; 79 Ark. 194.

The appellees are not without proper remedy under the statute. C. & M. Digest, sec. 10047.

*Fuhr & Futrell,* for appellees.

A void tax sale can be followed by none other than a void tax deed. Possession for the required two years under a void tax sale and deed does not effect a devolution or investiture of title.

The statute, C. & M. Digest, sec. 6947, is penal and must be strictly construed. 43 Ark. 409.

A statute of short limitations must be strictly construed. 86 Ark. 300; 49 Ark. 203.

The tax sale was void for the reason that the taxes had been paid and the land was not delinquent when sold.

The Legislature has the power to make the statute of limitations operate to devolve title, and, unless the language used is such as to compel such a construction, the courts should construe it as going to the remedy only. 83 Ark. 495; 96 Ark. 446; 96 Ark. 105; 67 Ark. 105.

Hart, J. Louis Mayo brought this suit in equity against W. A. Maywood to cancel as a cloud on his title a clerk's tax deed to certain land in the western district of Craighead County, Ark.

Maywood relied on the validity of the tax sale and adverse possession for two years under his tax deed.

The chancery court found the issues in favor of the plaintiff, and a decree was entered accordingly. To reverse that decree the defendant Maywood has duly prosecuted this appeal.

At the trial it was shown that the title to the land in question was in Louis Mayo, and that he had regularly paid the taxes on the land up to and including the year 1916. His tax receipt for the year 1916 is exhibited in the record. The land was sold by the collector of taxes for the nonpayment of taxes for the year 1916, and W. A.

Maywood became the purchaser at the tax sale. At the expiration of two years a clerk's tax deed was executed to Maywood, and he entered into possession of the land under it. He claimed to have been in possession of the land under his tax deed for two years before the present suit was brought, but the testimony as to the continuity of his possession is in dispute and will be discussed later.

Counsel for the plaintiff first seek to uphold the decree on the theory that a short statute of limitations like 6947 of Crawford & Moses' Digest applies only to tax sales invalid because of defects and irregularities in the proceedings, and that possession under such a statute will not sustain a deed that is valid on its face, if there were jurisdictional or fundamental defects in the sale, or where the taxes for the nonpayment of which the land was sold had in fact been paid.

This is what is called the majority rule in 26 R. C. L. par. 399, and, amongst other cases, reliance is placed upon the case of *Redfield* v. *Parks,* 132 U. S. 239, where the Supreme Court of the United States in construing the statute now under consideration held that a deed of land sold for the nonpayment of taxes, which recites that the sale was made on a day which was not the day authorized by law, is void on its face, and is not admissible in evidence to support an adverse possession under a statute of limitations.

Subsequent to the rendition of that decision this court took up the precise question in *Ross* v. *Royal,* 77 Ark. 324, and the court held that a tax sale on a day not appointed by law is void, but that actual possession of land taken and held continuously for the period of two years under a clerk's deed bars an action for recovery, whether the sale be merely irregular or void on account of jurisdictional defects. The court said that the statute in question is a statute of limitations, and as such prevents the impeachment of the title even on grounds of fundamental and jurisdictional defects where possession has been held for the requisite length of time under it.

In the application of the rule in *Dickinson* v. *Hardie*, 79 Ark. 364, the court held that continuous adverse possession for more than two years under a clerk's tax deed confers a valid title, although the owner of the land had paid the taxes before the day of sale. The court said that the statute in question is purely a statute of limitations and runs against void sales as well as voidable sales. These opinions have become rules of property in this State, and it is now too late to question their soundness or to overrule them.

Counsel for the plaintiff also seek to uphold the decree on the ground that the defendant did not have two years continuous unbroken possession of the land in question under his tax deed before this suit was brought, and in this contention we think counsel are correct.

The land in question was cut-over land. A railroad runs through one corner of the land. A sawmill company which had purchased the timber on the land had erected a small box storehouse on the railroad right-of-way on the land in question and another small box dwelling house on the land. After Maywood received his collector's tax deed, he purchased the small box storehouse on the right-of-way from the person who owned it and placed a tenant in the box dwelling house on the land in question. None of the land was in cultivation, and no rent was paid by the tenant, except that he agreed to look after the land for Maywood. This tenant remained upon the land for about eight months and then left. Another tenant immediately took possession of the house for Maywood. After remaining on the land for some months he left it, and the house was vacant for about a month before Maywood got another tenant to move into the house. During all of this time no land was placed in cultivation and no improvements were made upon the land, except that a fence was placed around a garden spot which had been cleared. There was also a small amount of firewood cut from the land by the tenant for his own use.

In order to acquire title to woodland there must be actual use of the land of such unequivocal character as to reasonably indicate to the owner visiting the premises during the statutory period, that such use and occupation indicate an appropriation of ownership in another. *Earle Imp. Co.* v. *Chatfield,* 81 Ark. 296, and *Connerly* v. *Dickinson,* 81 Ark. 258. We quote from the earlier case of *Scott* v. *Mills,* 49 Ark. 266, the following:

"The adverse possession necessary to vest title in the holder must be continuous and unbroken for the full period prescribed by the statute. 'Adverse possession,' says Mr. Justice GIBSON, in *Stephens* v. *Leach,* 7 Harris 262, 'professing as it does to be founded not on title but on trespass, is essentially aggressive, and the stamp of its character must always be preserved by acts on the premises. A man does not discontinue his possession by locking up his house in town, or suspending his cultivation in the country, provided he does not suffer the buildings in the one case, or the fields in the other, to be thrown open; but he is bound to continue a positive appearance of ownership by treating the property as his own, and holding it within his exclusive control. An intention to resume suspended intrusion of which the owner of the title may know nothing, is short of the requirements of the statute. The question is not, what did the outgoing occupant intend? but, what did he do? Did he keep his flag flying and present a hostile front to adverse pretensions? An adverse possession ought to be such as to challenge the right of all the world; but when an occupant has evacuated the place and suffered it to go to wreck, he hauls down his colors and his challenge is withdrawn.' In other words, when one leaves the ground personally, during the period of limitation prescribed by the statute, he must leave it under circumstances indicating that he has not left the possession, but still holds it. He must so leave it that the condition and appearance of the premises themselves show to the world

that there is still a person in actual control and exercise of dominion. If he should leave the premises, personally, but not in the condition or manner indicated, before the expiration of the time prescribed by the statute of limitations, he acquires no title by adverse possession.''

In the application of this principle to the present case it may be said that during the month of the two years in question when the land was vacant there was nothing to indicate to the owner, had he visited the place, that any one was in possession of it claiming it exclusively as his own.

It follows that the decree must be affirmed.