CHAVIS *v.* HENRY.

4-6931                                    168 S. W. 2d 610

Opinion delivered February 1, 1943.

A. D. *Chavis,* for appellant.

*Rowell, Rowell & Dickey,* for appellee.

McFADDIN, J. The fractional southwest quarter of section 18, township 4 south, range 10 west, in Jefferson

county, Arkansas, contains 194.92 acres by government survey. This quarter section is divided into two lots: Lot 1 is the east 80 acres and lot 2 is the west 114.92 acres. The subdivisions of the east 80 acres are described as: the northeast quarter of the southwest quarter, 40 acres; and the southeast quarter of the southwest quarter, 40 acres. The west 114.92 acres is described as the "west fractional half of the southwest quarter," or as the "fractional west half of the southwest quarter."

Appellees, George Henry and Howard Bartlett, filed this suit in the Jefferson chancery court against A. D. Chavis, Sr., and wife, and A. D. Chavis, Jr., and wife, and L. E. Sallee, county clerk of Jefferson county. The plaintiffs alleged that they were the owners of all of the fractional southwest quarter of said section 18 containing 194.92 acres, and that A. D. Chavis, Sr., had no interest in the lands, but was seeking by a tax claim to acquire some interest; and the county clerk was made party to enjoin him from issuing any deed to anyone until the further orders of the court. The plaintiffs prayed that their title be quieted to all of the fractional southwest quarter of section 18 except the northeast quarter of the southwest quarter, which they conceded to be in A. D. Chavis, Jr.; and the plaintiffs prayed that certain instruments executed to and/or by A. D. Chavis, Sr., be canceled as clouds on the plaintiffs' title. A. D. Chavis, Sr., answered for himself and the other Chavis defendants denying plaintiffs' title and claiming under a rival title. The chancery court awarded the northeast quarter of the southwest quarter (40 acres) to A. D. Chavis, Jr., and the southeast quarter of the southwest quarter (40 acres) to A. D. Chavis, Sr., and the fractional west half of the southwest quarter (114.92 acres) to the plaintiffs (appellees); and from this decree A. D. Chavis, Sr., has appealed. Thus, by the decree of the chancery court, from which the appellees have not appealed, the title to the east 80 acres of the southwest quarter (described as the northeast quarter of the southwest quarter, 40 acres, and the southeast quarter of the southwest quarter, 40 acres) is not involved on this appeal; and there is before this court the title to the

fractional west half of the southwest quarter containing 114.92 acres.

This fractional west half of the southwest quarter was patented by the United States to James Jackson, who died many years ago, survived by his wife, Harriet (who remarried and became Reynolds) and by one or two sons. One son was named Elisha, and he died in infancy. The legitimacy of the other son, Henry Jackson, is questionable; but the title to the entire fractional west half of the southwest quarter (114.92 acres) passed either by inheritance or by adverse possession to Henry Jackson and to his mother, Harriet Reynolds, long before the present litigation; and they became source of title. The plaintiffs (appellees) deraign, title by deeds duly of record as follows:

1. Henry Jackson and his wife and Harriet Reynolds, his mother, conveyed to S. and D. M. and Harold Bluthenthal, by deed in 1912, thirty-five acres off of the east side of the fractional west half of the southwest quarter; and this thirty-five acres was described by metes and bounds as follows: "Beginning at the northwest corner of the northeast quarter of the southwest quarter of said section 18, thence west eight chains and 75 links, thence south forty chains, thence east eight chains and 75 links, thence north forty chains to the point of beginning, containing 35 acres."

2. S. and Harold Bluthenthal conveyed to Bluthenthal Supply Company in 1928, under the following description: "The fractional west half of the southwest quarter of section 18 . . . known as the Henry Jackson land."

It will be observed that this left the one-third interest of D. M. Bluthenthal outstanding, and it will be further observed that this description to the Bluthenthal Supply Company was a broader description than the one from Henry Jackson.

3. Bluthenthal Supply Company executed a deed of trust to W. C. Hudson in 1928, describing the land just as it was described in the deed to the Bluthenthal Supply Company.

4. In a foreclosure suit in 1934, the above-mentioned deed of trust was foreclosed, and the property was purchased by the Simmons National Bank; and in the foreclosure decree and in the commissioner's deed the property was described as "an undivided two-thirds interest in the fractional west half of the southwest quarter of section 18 . . . known as the Henry Jackson lands."

5. Simmons National Bank conveyed by quitclaim deed to J. C. Fox, trustee, *et al.,* in 1937, using the same description.

6. J. C. Fox, trustee, *et al.,* conveyed by quitclaim deed to the appellees (plaintiffs) in 1941, describing the property as "fractional southwest quarter of section 18 . . ." (but without specifying any number of acres).

The appellant, A. D. Chavis, Sr., claims title to the west 79.92 acres (being all of the fractional west half of the southwest quarter except the Bluthenthal thirty-five acres) under deeds, duly of record, from the alleged heirs of Henry Jackson. One deed is from Alex Jackson and the other from Alphy Jackson Perry; and appellant, A. D. Chavis, Sr., testified that he knew Henry Jackson in his lifetime and that he was survived by Alex Jackson and Alphy Jackson Perry, and that these said heirs executed the deeds under which A. D. Chavis, Sr., claimed.

From the deraignment of the appellees' title, it will be observed that all that the Jacksons ever sold to the Bluthenthals was thirty-five acres, and that this was by definite and correct description. In the subsequent conveyances, in appellees' line of title, broader descriptions were used, but these did not enlarge the title out of the Jacksons; and the appellees showed no title out of Henry Jackson and Harriet Reynolds to themselves or any of their predecessors in title to any part of the fractional west half of the southwest quarter except the Bluthenthals' thirty-five acres.

The plaintiffs (appellees) must recover on the strength of their own title, whether this case be considered as one in ejectment, or one to quiet title.

For ejectment cases, see: *Carpenter* v. *Jones,* 76 Ark. 163, 88 S. W. 871; *Wallace* v. *Hill,* 135 Ark. 353, 205 S. W.

699, and cases collected in West's Arkansas Digest, "Ejectment," § 9.

For quieting title cases, see: *Nix* v. *Pfeifer*, 73 Ark. 199, 83 S. W. 951; *Little* v. *Williams*, 88 Ark. 37, 113 S. W. 340; *Sanders* v. *Boone*, 154 Ark. 237, 242 S. W. 66, 32 A. L. R. 461, and cases collected in West's Arkansas Digest, "Quieting Title," § 10.

Since the plaintiffs (appellees) did not show any deraignment of title except to an undivided two-thirds interest in the thirty-five acres, and since the plaintiffs introduced no testimony of possession, or occupancy, or payment of taxes for seven years, it therefore necessarily follows that the plaintiffs are not entitled to recover the remaining 79.92 acres in the fractional west half of the southwest quarter (the difference between the 114.92 acres and the Bluthenthal 35 acres); and the decree of the chancery court awarding the said 79.92 acres to the plaintiffs was erroneous.

Regarding the thirty-five acres of land deeded by Jackson to Bluthenthal, we have already shown the appellees' deraignment of title. The appellant, A. D. Chavis, Sr., deraigns his title to this thirty-five acres from a tax sale to the state for the taxes of 1932, where the land was listed as follows:

"Bluthenthal Supply Company—fractional west half of the southwest quarter of section 18, 35 acres." Under the same description, the state's title was confirmed by the Jefferson chancery court on November 3, 1936, pursuant to act 296 of 1929 and act 119 of 1935. On March 3, 1937, A. D. Chavis, Sr., obtained a deed from the state of Arkansas to the land under the same description; and the record shows that he immediately entered into actual possession of the land and has cleared and put in cultivation some additional acreage. This suit was not filed until December 3, 1941, and A. D. Chavis, Sr., has pleaded the two-year statute of limitations under his state deed. (Section 8925 of Pope's Digest.) The appellees attack the tax sale to the state for 1932 taxes on only three grounds, and these are:

1. That the levying court for 1932 did not follow §§ 13616-7 of Pope's Digest. (These sections fix the date

for the quorum court to meet and provide for the determination of the amount to be raised, and require that the proceedings be set forth in a record.)

2. That the land was sold to the state for more than the correct amount of the taxes, the excess complained of being ten cents.

3. That the improvements on the land were not assessed separately from the land.

There is no necessity to discuss these grounds of attack to determine whether or not the confirmation proceedings cured the sale, because the appellees are defeated by the two-year statute of limitations (§ 8925 of Pope's Digest). This court has many times held that the two-year statute applies to possession under a tax deed which sufficiently describes the land and purports to convey the same even though the tax sale was void.

In *Carpenter* v. *Smith*, 76 Ark. 447, 88 S. W. 976, Judge Wood, speaking for the court, said: "Two years of such possession under his tax deed was sufficient to give appellee title. Section 5061, Kirby's Digest; *Helena* v. *Hornor*, 58 Ark. 151, 23 S. W. 966; *Cooper* v. *Lee*, 59 Ark. 460, 27 S. W. 970; *Woolfork* v. *Buckner*, 67 Ark. 411, 55 S. W. 168; *Crill* v. *Hudson*, 71 Ark. 390, 74 S. W. 299; *Boynton* v. *Ashabranner*, 75 Ark. 514, 88 S. W. 568."

And in the case of *Ross* v. *Royal*, 77 Ark. 324, 91 S. W. 178, Judge McCulloch, speaking for the court, said: "The statute under consideration is plainly a statute of limitation, and begins to run, not from the date of the sale, but from the date actual possession is taken under the deed. *Haggart* v. *Ranney*, 73 Ark. 344, 84 S. W. 703, *supra; McCann* v. *Smith*, 65 Ark. 305, 45 S. W. 1057. Actual possession of land taken and held continuously for the statutory period of two years under a clerk's tax deed or donation deed issued by the Commissioner of State Lands bars an action for recovery, whether the sale be merely irregular, or void on account of jurisdictional defects."

And in *Bradbury* v. *Dumond*, 80 Ark. 82, 96 S. W. 390, 11 L. R. A., N. S., 772, Chief Justice Hill, speaking for the court, said: "This court has adopted the view

that a deed based on a void tax sale, on its face describing the land and purporting to convey it, is color of title within the statute of limitations. See the cases recently reviewed on that subject. *Ross* v. *Royal,* 77 Ark. 324, 91 S. W. 178."

In *Jones* v. *Temple,* 126 Ark. 86, 189 S. W. 847, Judge HART, speaking for the court, said: "Where a purchaser of land has been in actual possession of the land under a tax deed for more than two years, he acquires title, regardless of the validity of the tax sale. *Walker* v. *Helms,* 84 Ark. 614, 106 S. W. 1170."

A score of cases could be cited on this point. Many of these are collected in § 1529 of that excellent book by Mr. Jones on Arkansas Titles. We have quoted some of the original cases to show that the holding here is neither an innovation nor a departure from the old law, but is a recognition of the old cases. It, therefore, follows that appellant, A. D. Chavis, Sr., must prevail on his claim of possession under the tax deed regardless of the contentions that the appellees have raised.

Therefore, this cause is reversed and remanded to the chancery court with directions to enter a decree in accordance with this opinion.

The Chief Justice, Mr. Justice SMITH and Mr. Justice ROBINS dissent from so much of this opinion as awards the thirty-five acres to appellant, Chavis.

SMITH, J., (dissenting). It occurs to me that the error in the majority opinion becomes apparent once the facts there recited are clearly understood. They are these. Two tracts of land in the west half, southwest quarter of section 18 were assessed for the taxes of 1932 described as follows: Part west fractional half southwest quarter; fractional west half, southwest quarter.

These two descriptions, together, were intended to describe the fractional west half, southwest quarter, the combined acreage of the two descriptions being 114.92 acres, the first containing 35 acres and the second 79.92 acres. Neither description purported to include all of the west half, southwest quarter. Therefore, the description, fractional west half, southwest quarter of section 18, could not and did not include all the land in the west half,

southwest quarter. Under these facts both descriptions were bad.

The fractional southwest quarter, by the Government survey contained 194.92 acres, and by that survey the fractional quarter section was divided into two lots. The east lot, or lot 1, contains 80 acres; the other lot, or lot 2, contains 114.92 acres. Now, 35 acres of this lot 2 sold for the taxes of 1932. The remainder of the lot, or 79.92 acres, was not, therefore, included in the description under which the 35-acre tract was sold. In other words, there were two tracts of land each a part of the west half, southwest quarter, and the description, fractional west half, southwest quarter, under which the 35-acre tract was sold, would be as applicable to the one tract as to the other, and for that reason the description, fractional west half, southwest quarter, is not a description of either the 35-acre tract or the remaining 79.92-acre tract.

It does not appear from the Government survey how lot 2 of fractional southwest quarter was divided into two lots, one containing 79.92 acres, the other 35 acres. These descriptions are the result of private conveyances of the land.

The description ''Pt.'' or ''Part'' in a tax sale has always been held insufficient and void, for the reason that it describes nothing, and it necessarily imports that it is less than the whole—that something remains—and it cannot be known what part is included and intended.

Now, the description ''Frl.'' or ''Fractional'' may or may not be good. Ordinarily, it imports that the subdivision described is irregular in shape or in acreage. Now, if it purports to describe and include all the subdivision, and there is no other land in the subdivision, the description is good. But if there is a tract of land in the subdivision in addition to another part described as fractional, then both descriptions would be ''Part,'' as the description ''Fractional'' in the case stated could mean only a part of that subdivision.

That is the case here. The tax sale which the majority say was confirmed was of ''fractional west half, southwest quarter, 35 acres,'' but that description means

only a part of the west half, southwest quarter. It cannot mean all of the west half, southwest quarter, for the reason that the tax books and the Government survey as well show that there is another and a larger part of the west half, southwest quarter which was not sold for the taxes.

In effect and in fact, the description in the deed to Chavis from the state conveyed only a part of the west half, southwest quarter, and neither confirmation of the sale upon which this deed was based nor possession under this deed could or would cure the invalidity of the sale.

The majority cite cases such as *Ross* v. *Royal,* 77 Ark. 324, 91 S. W. 178, (and there are more to the same effect) that the two years' possession provided for by § 8925, Pope's Digest, is a statute of limitations, and concludes all inquiry into the validity of the tax sale upon which the deed is based; but the principle is equally as well settled that this possession must be under a deed correctly describing the land sold. *Wilson* v. *Triplett,* 204 Ark. 902, 165 S. W. 2d 943.

In the case of *Woodall* v. *Edwards,* 83 Ark. 334, 104 S. W. 128, Chief Justice HILL said: ''The two-year statute is the shortest limitation statute barring recovery of land. It applies to void tax sales as well as valid ones, yet it must not be extended to deeds void for uncertainty in description of the land conveyed. Such a deed can not aid or explain possession, for it lacks an identification of any land. Neither the owner nor the public were bound to take knowledge of any tax proceedings against land so described and the title alleged to be conveyed by such deed, and hence possession under it would confer nothing more than possession without any deed, and it would require seven years of adverse possession of the land to give title.''

For the same reason the confirmation decree did not give title to the 35-acre tract of land, for the reason that no land was sufficiently described in the decree.

For these reasons Mr. Justice ROBINS and the writer think it was error to award title to Chavis to the 35-acre tract. The Chief Justice concurs in this dissenting opinion.