BAILEY, TRUSTEE *v.* MARTIN.

4-9411                                        237 S. W. 2d 16

Opinion delivered March 12, 1951.

*Richard Mobley,* for appellant.

*Hays, Williams & Gardner,* for appellee.

MINOR W. MILLWEE, Justice. This is a suit by Robert Bailey, as trustee for his two sons, to restrain appellee, Tom Martin, from trespassing on certain lands, to cancel a deed under which appellee claims title, and to quiet appellants' title to the property. Under the pleadings and testimony, both parties claimed record title to the disputed tract as well as title by adverse possession and appellee also asked that his title be quieted. The case was tried by the chancellor on exchange upon depositions resulting in a decree dismissing appellants' complaint and dissolving an injunction issued against appellee at

the beginning of the suit temporarily restraining him from trespassing on said lands.

The area in dispute is the north half of a trapezoid tract containing 28.39 acres. J. B. Campbell, formerly owned a fractional 40-acre tract in Pope County described as, "The fractional NW¼ of SW¼ of Section 6, Township 7 N, Range 20 West, containing 53.89 acres more or less." On January 17, 1917, Campbell and wife executed separate warranty deeds to Ben Woods and James Edwards. Each of the deeds described by metes and bounds the *south half* of a tract located within the aforesaid fractional 40-acre tract, as follows: "Beginning at a point 34 rods East of the Northwest (NW) corner of said NW Fr. SW¼ and running thence East 73.72 rods to the Northeast (NE) corner of said NW Fr. SW¼; thence South 80 rods to the Southeast (SE) corner of said NW Fr. SW¼; thence West 39.84 rods; thence Northwest (NW) along the top of the Mountain to Point of Beginning containing 15 acres, more or less." On the same date Ben Woods and wife conveyed by warranty deed to Pope County Real Estate Co. describing the property as in the two previous deeds except that it conveyed the *north half* of the tract. The deed to Ben Woods was recorded December 1, 1917, and the deed from Woods to the real estate company was recorded December 23, 1918. The deed to James Edwards was recorded March 12, 1919.

On February 28, 1920, the sheriff of Pope County, as the result of an execution sale against James Edwards, executed a sheriff's deed to Tom Henry of the land deeded to Edwards. On July 18, 1921, Tom Henry and wife conveyed by quitclaim deed to Robert Bailey, as trustee, the *south half* of a tract described by metes and bounds as follows: "Beginning 34 rods East of the Northwest (NW) corner of the said NW¼ of SW¼ and running thence East 73.72 rods to the Northeast (NE) corner of said NWFRSW¼; thence East 39.84 rods; thence Northwest (NW) along the Mountain to Point of Beginning and containing 15 acres, more or less." This deed further recites an intention to convey all interest in

"the land that formerly belonged to Perk Edwards, and sold by the sheriff under execution and bought in by Tom Henry." This deed was recorded October 26, 1921.

Robert Bailey sold the property to W. N. Lucy in December, 1921, under an unrecorded conveyance. Lucy and wife executed a mortgage to Bailey, as trustee, on December 29, 1921, describing the land as in the original deed from J. H. Campbell and wife to James Edwards, the description beginning, "The south half" and ending "containing 15 acres more or less." Appellants also introduced a warranty deed from W. N. Lucy and wife to Robert Bailey, trustee, dated May 24, 1922. In this deed the south half of the tract is described as containing 28.39 acres for the first time. In this connection Mr. Bailey testified that he only bought back from Lucy what he had sold him. This deed was not placed of record until October 21, 1948. On November 14, 1925, appellants entered into a sale contract of the property to Dell Goddard describing the property as the south half of the described tract, containing 15 acres more or less.

After appellants obtained the deed from Tom Henry in 1921 the property was carried on the tax records in appellants' name as "Pt. NWSW, 15 acres" from 1922 to 1947. The Pope County Real Estate Company assessed and paid taxes on "Pt. NWSW, 15.34 acres" from 1919 to 1947.

The Pope County Real Estate Co. was a corporation formerly owned by J. F. Hogins and W. O. Bonds. Hogins died in 1927 and Bonds in 1944. In September, 1948, the heirs of Hogins and Bonds executed a quit-claim deed to appellee to the *north half* of the tract as described in the deed from Ben Woods and wife to the Pope County Real Estate Co. This deed was recorded on November 20, 1948. Appellants filed this suit on February 26, 1949, after appellee began cutting timber on the north half of the 28.39-acre tract.

As to possession of the north half of the 28.39-acre tract the evidence is in sharp dispute. Appellee offered testimony showing that after the real estate company

acquired its deed from Ben Woods in 1917, Leslie Hogins, son of J. F. Hogins, entered into possession of the disputed tract in the early 1920s and constructed a chicken ranch on the property which he abandoned about a year later. After execution of the sales contract to Dell Goddard in 1925, the latter testified that he constructed or repaired a house on the north half of the 28.39-acre tract, but the preponderance of the evidence discloses that this house was located on the south half. Goddard did not move on the property until about 1928 or 1929 and abandoned it about a year later when he decided that he could not make the payments under the contract.

Walter Dennis moved on the north part of the tract in 1931 as the tenant of Mrs. J. F. Hogins, representing the real estate company. He remained on the property until 1933.

In 1933 or 1934 Tom Simpson, Jr. moved on the north half of the tract where he remained until 1941. The evidence is in sharp dispute as to whether he was a tenant of appellants, a tenant of the real estate company, or merely a squatter. Mrs. Hogins testified that the Simpsons moved on the property with her permission under an agreement with Mrs. Tom Simpson, Jr. She recalled that Mrs. Simpson brought her some black berries to apply on the rent when the Simpsons first moved on the property. Although Tom Simpson, Jr. testified that he was the tenant of appellants, he did not deny that they moved on the property under the arrangements made by his wife. He paid no rent to appellants, but stated that he was to remain on the premises on the condition that he keep fire out of the timber on the place. After Tom Simpson, Jr. moved in 1941 or 1942, Mrs. Oliver Simpson moved on the place for a short time and moved off when Robert Bailey approached her about paying house rent. Ernest Standridge moved in the house on the north part of the tract in March or April, 1945, and remained there about a year as a tenant of appellants.

Walter Dennis testified that there was a wire fence dividing the north and south parts of the 28.39-acre tract

while he lived on the north part. Although Tom Simpson, Jr. testified that there was "no fence to amount to anything", between the two properties, he further testified that he built a fence while living on the property, but that this fence was not on the line. Lloyd Jolley testified that he removed about 15,000 feet of timber from the north part of the tract sometime between 1920 and 1925 under a purchase from Hogins and Bonds.

It is undisputed that Tom Simpson, Sr. has lived on the south half of the 28.39-acre tract since 1933 as the tenant of appellants and appellee does not question appellants' title to the south half. Simpson testified that appellants paid him to cut some underbrush from the north part of the tract about 1940.

Robert Bailey and J. F. Hogins were personal friends. Mr. Bailey was attorney for Mrs. Hogins in the administration of the J. F. Hogins estate from 1927 to 1932 but stated that he had never represented the real estate company and had nothing to do with any real estate involved in the Hogins estate. Appellee offered testimony of certain conversations and actions by appellants indicating their knowledge and recognition of the title of the Pope County Real Estate Company to the tract in controversy over the years prior to 1946. This testimony was stoutly disputed by appellants and it would serve no useful purpose to detail it here.

The tract in controversy is located near the City of Russellville along Skyline Drive, a mountain road constructed about 1939, which runs north and south through the entire 28.39-acre tract. In the past few years the tract has increased in value because of its availability for residential building sites. In 1946 appellant Craig Bailey, son of Robert Bailey, moved on an adjoining tract and shortly thereafter appellants began certain improvements on the tract in dispute by removing underbrush and levelling a part of the tract with a bulldozer.

In order to prevail in the instant suit the burden was on appellants to show either record title to the north

half of the tract or title by adverse possession, and the question here is whether the chancellor erred in his findings against appellants on this issue. We have repeatedly held that in a suit to quiet title the plaintiff must recover on the strength of his own title. *Nix* v. *Pfeifer,* 73 Ark. 199, 83 S. W. 951; *Chavis* v. *Henry,* 205 Ark. 163, 168 S. W. 2d 610.

We think it is apparent that there was a mistake of the scrivener in the deed from J. B. Campbell and wife to Ben Woods in 1917 in conveying the *south half* of the tract instead of the *north half* as intended. A consideration of the acreage contained in the fractional northwest quarter, the location of the 28.39-acre tract within the fractional quarter and the metes and bounds description used in the deeds executed by the Campbells demonstrate that the whole 28.39-acre tract is not the *south half* of any subdivision of land. The testimony of two surveyors clearly shows that the deed to appellants' predecessor in title, James Edwards, was intended to convey the south half of the 28.39-acre tract, containing 15 acres, more or less.

Appellants' claim of record title is based on the quitclaim deed from Tom Henry and wife dated July 18, 1921. It is clear from the metes and bounds description employed in this deed that it does not set out the boundaries of any tract of land and is void for indefiniteness of description. Appellants could not strengthen their record title to the disputed north half of the tract by the conveyance from W. N. Lucy and wife in 1922 in which the whole 28.39-acre tract was attempted to be conveyed for the first time. Whether the deed from Tom Henry and wife could be reformed in a proper suit is not an issue here. *Thomason* v. *Abbott,* 217 Ark. 281, 229 S. W. 2d 660. It follows that appellants' claim of record title to the tract in controversy must fail.

Appellants contend that they and their predecessors in title have had constructive adverse possession of the entire 28.39-acre tract under color of title since 1917. Appellants rely on *St. Louis Union Trust Co.* v. *Hillis,* 207 Ark. 811, 182 S. W. 2d 882, and similar cases which

hold that a grantee in actual possession under an instrument constituting color of title is deemed in constructive possession of the entire body of land described in the instrument. While color of title is not necessary to give title by adverse possession, it is necessary to extend the title so acquired beyond the limits of actual possession. *Bradbury* v. *Dummond,* 80 Ark. 82, 96 S. W. 390, 11 L. R. A. 772. We have also held that actual possession of a tract of land under an instrument giving color of title to it and to an adjacent tract does not draw to it the constructive possession of the adjacent tract, as against its true owner, unless his boundaries have been invaded by actual possession and occupancy of a part of his tract. *Haggart* v. *Ranney,* 73 Ark. 344, 84 S. W. 703.

In *St. Louis I. M. & S. Ry. Co.* v. *Moore,* 83 Ark. 377, 103 S. W. 1136, the court said: "This court has recently held that there can be no constructive adverse possession of land against the owner when there is no actual possession of any part of his land. *Haggart* v. *Ranney,* 73 Ark. 344, 84 S. W. 703. When one takes possession of one of two adjoining tracts of land under a deed conveying both tracts to him, if the actual title to the two tracts is in different persons, his actual possession of one tract will not give constructive possession of the other so as to oust the owner of that tract. The reason for this is that in such a case the possession of one tract is no notice to the owner of the other tract that his land is claimed adversely. If the law were otherwise, one by buying a small tract and taking a deed conveying the adjacent unimproved lands with the tract bought might, by taking possession of the tract bought become constructively in the possession of the land without any visible act to notify the owners thereof of such adverse claim." See, also, *Hardie* v. *Investment Guaranty & Trust Co., Ltd.,* 81 Ark. 141, 98 S. W. 701; *Carter* v. *Stewart,* 149 Ark. 189, 231 S. W. 887, 232 S. W. 936; *Anthony* v. *International Paper Co.,* 207 Ark. 396, 180 S. W. 2d 828; *Staton* v. *Moore,* 210 Ark. 416, 196 S. W. 2d 573.

Under the rule followed in the cases cited it was incumbent on appellants to prove actual possession of at

least a part of the north half of the 28.39-acre tract for the statutory period. Appellants' deed from Tom Henry and wife in 1921, being void because of indefiniteness of description, did not constitute color of title. *Dickson* v. *Sentell*, 83 Ark. 385, 104 S. W. 148. At the time appellants went into possession of the south half of the 28.39-acre tract the north half was in the actual possession of appellee's predecessor in title, Pope County Real Estate Co. The same situation existed when W. N. Lucy and wife executed the deed to appellants in 1922. If it be conceded that this deed gave appellants color of title, the trial court was warranted in concluding that appellants did not maintain actual possession of a part of the north half for seven years continuously while in possession of the south half.

As previously indicated, the evidence is in sharp dispute as to actual possession of the north half of the tract since 1925. Dell Goddard's possession under his 1925 contract with appellants, if not actually confined to the south half, lasted only 3 or 4 years at the most. Walter Dennis had possession as tenant of the real estate company from 1931 to 1933. We think the preponderance of the evidence shows that Tom Simpson, Jr. entered possession in 1933 as the tenant of Mrs. J. F. Hogins who represented the real estate company. The rule is that where the entry is permissive the statute will not begin to run against the legal owner until an adverse holding is declared, and notice of such change is brought to the knowledge of such owner. *Britt* v. *Berry*, 133 Ark. 589, 202 S. W. 830. The evidence here is insufficient to show proper notice to Mrs. Hogins of a change in the permissive possession under which Simpson entered. After Mrs. Oliver Simpson left the property in 1942, it was apparently vacant until Standridge entered in 1945.

It is well settled that in order to confer title by adverse possession, the possession must be shown to have been continuous for the full statutory period. *Sanderson* v. *Thomas*, 192 Ark. 302, 90 S. W. 2d 965. During the intervening periods of vacancy of the north half from 1941 to 1946 there was nothing to indicate to the

legal owner, had he visited the place, that any one was in possession of the land claiming it as his own. Under these circumstances, appellants did not hold that continuous and unbroken possession for the statutory period which is essential to confer title by adverse possession. *Norwood* v. *Mayo*, 153 Ark. 620, 241 S. W. 7.

On the whole case we cannot say that the chancellor's conclusion, that appellants did not establish title and right to possession of the disputed tract, is against the preponderance of the evidence. The decree is, therefore, affirmed.