## WINFORD et al. v. GRIFFIN.

### CHAMBERS v. SAME.

(Circuit Court of Appeals, Eighth Circuit. July 18, 1924.)

Nos. 6096, 6097.

**1. Navigable waters ⬳42(1)—Island belongs to state.**

In Arkansas high-water mark is boundary of riparian owner, and bed from that point to thread of stream belongs to state, and island which rises from bed on Arkansas side of Mississippi river belongs to state.

**2. Navigable waters ⬳42(1)—Description of part of island held ineffectual.**

Under Arkansas rule that riparian owner owns only to high-water mark, description of part of island in Mississippi river as to and along center of channel *held* ineffectual.

**3. Navigable waters ⬳46(2)—Deed construed as to land conveyed.**

Where owner of island, part of which was in front of plantation in section 6, conveyed 50 acres, describing the land as being in front of such plantation, and also erroneously describing the boundary as running to the center of the channel and with such center to the boundary line of such plantation, *held*, that grantee acquired no part of island west of west line of section 6 projected across the island.

**4. Adverse possession ⬳41—Failure to object to title of purchaser at mortgage foreclosure for 20 years held to make it inequitable to deny his title.**

Where purchaser of "about 400 acres * * * on Island 87" at foreclosure went into possession, and for over 20 years exercised ownership and paid taxes on all of the island but 50 acres, without objection by adjoining owners, *held*, that conduct of all interested parties was consistent with his claim of ownership, and it would be inequitable to hold that he was not owner.

**5. Quieting title ⬳6—Title not quieted in absence of adverse claim.**

Where there was neither allegation in cross-complaint nor evidence that plaintiff claimed a particular island, defendants were not entitled to have their title thereto quieted.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit by J. W. Griffin against A. S. Winford and another, in which J. T. Chambers intervened. From a decree dismissing all parties without relief, defendants and intervener separately appeal. Affirmed.

Hugh C. Watson, of Greenville, Miss., and J. C. Gillison, of Lake Village, Ark., for appellants.

Before SANBORN and LEWIS, Circuit Judges, and SCOTT, District Judge.

LEWIS, Circuit Judge. Appellee brought this suit against appellants Winford and Wineman to quiet title to an island known as Island 87 in the Mississippi River on the Arkansas side in Chicot County. Appellant Chambers was permitted to intervene as a defendant. The complaint alleged that the island had contained between 400 and 500 acres, but by accretions and recession of the waters it had increased in area. It was admitted that Winford and Wineman owned 50 acres, described by metes and bounds, and it was alleged that they claimed to be the owners of a part of the island other than the 50 acres, the nature and extent of that claim being unknown to appellee, and he prayed that they be required to set forth their claim, that a hearing be had thereon, that title to the island, except the 50 acres, be adjudged in appellee and quieted in him as against the claims of Winford and Wineman. They answered denying title in appellee to any part of the island, denying that its area had been extended by recession and accretions, and set up title in themselves to all that part of the island lying west of a north and south line through the center of section 6, township 18, range 1 east, projected south across the island to the waters of the Mississippi River. Chambers in his answer also denied appellee's title. The land to which he claims title will be stated later. After hearing the proof the parties were all dismissed out of court without relief.

An understanding of the physical situation, disclosed by the record, must be had before the contention of the respective parties may be appreciated. The river in its southward course makes a sharp bend to the west. Island 86 lies just below the bend on the Arkansas side and is owned by Chambers. He owns other lands opposite this island on the Arkansas side, extending down to the old bank of the river. Originally there was a chute or channel between Island 86 and the bank. It is now filled up and overgrown with vegetation, but its course is clearly marked and can be followed. Island 87 is in part alongside Island 86, but it extends much farther down the river. There was a chute between the two islands and it extended on down between Island 87 and the Arkansas side. For many years it carried a considerable volume of water. When the river was high boats reached a landing through it. By accretions to the lower end of Island 87 it continued to extend slowly and imperceptibly down the river, the water in the chute between Island 87 and the Arkansas side became of less volume and depth, and the landing had to be abandoned about 1897. Then it was that W. H. Lacy, who owned,

resided upon and cultivated Island 87, conveyed to B. G. Kiger the 50-acre tract across the island, extending from the chute on the north to the river bank on the south side of the island. Kiger owned the west half of section 6, the south line of which was about coincident with the chute, and other adjoining lands, and had maintained the landing there. When he bought the 50 acres across Island 87 he bridged over the chute and established a new landing on the south bank of the island. This landing place was later obstructed by a sandbar in front of it, which made slowly down the river from above, and it also had to be abandoned. The bar continued to extend on down the river, leaving a chute between it and Island 87. In later years the bar in places became dry land and was covered with a growth of willows and small cottonwood. The great weight of the evidence convinces that this bar first appeared and began to form in the river off Island 86 and made down the river from that point alongside the two islands, leaving a chute between it and them. As the bar rose above high water mark the chute gradually filled in from its upper end down the river between the two islands. At the time of the trial it was open at the lower end and there was water in it much of the way except at its upper end, where it had filled and was covered with vegetation. So it appears that three islands were successively formed at and just below this bend, each in part opposite the other and each in turn extending farther down the river. As to Island 87, it was stipulated that W. H. Lacy was the common source of title. After Lacy deeded the 50-acre tract to Kiger he gave a mortgage on his remaining interest in Island 87, and appellee Griffin in April, 1907, became purchaser at foreclosure sale under that mortgage. Through mesne conveyances Winford and Wineman, in June, 1918, became the owners of the 50-acre tract on the island conveyed to Kiger.

It will be convenient to dispose of the claim of Chambers first. In his answer he claimed title to all of the land lying east of a line running north and south through the middle of section 6, township 18, range 1 east, projected south to the waters of the Mississippi River and lying south of the chute adjoining the south line of Island 87. That is to say, he made claim to all of what we have spoken of as the sandbar lying on the south side of Islands 86 and 87 and east of the line through the center of section 6 projected south across the bar to the river.

He describes it definitely in his assignments of error as follows:

"Beginning at the upper or eastern end of Island 86, in Chicot County, Arkansas; thence down the western shore of that river southward and westward to where it intersects the projected north and south line running through the center of Section Six (6), Township Eighteen (18) South, Range One (1) East; thence with the latter line north to the center thread of the chute lying along the southern shore of Island 87; thence up that chute eastward and northeastward and northward along the outer shore of Island 87, and along the outer shore of Island 86, following the center thread of the chute lying there, to the point of beginning."

[1] In Arkansas, high water mark is the boundary line of the riparian owner, and the bed from that point to the thread of the stream belongs to the State. Railway Co. v. Ramsey, 53 Ark. 314, 13 S. W. 931, 8 L. R. A. 559, 22 Am. St. Rep. 195; Wallace v. Driver, 61 Ark. 429, 33 S. W. 641, 31 L. R. A. 317; Nix v. Pfeifer, 73 Ark. 199, 83 S. W. 951; Harrison v. Fite, 148 Fed. 781, 78 C. C. A. 447. An island which arises from the bed of the stream on the Arkansas side would, therefore, belong to the State. Whitaker v. McBride, 197 U. S. 510, 25 Sup. Ct. 530, 49 L. Ed. 857; State of Iowa v. Carr, 191 Fed. 259, 112 C. C. A. 477. "It is well settled that the owner in fee of the bed of a river, or other submerged land, is the owner of any bar, island or dry land which subsequently may be formed thereon." St. Louis v. Rutz, 138 U. S. 226, 247, 11 Sup. Ct. 337, 345, 34 L. Ed. 941. It was Chambers' contention that this sandbar had accreted to Island 86 and to his lands lying on the Arkansas side above it and back of it; but the statement which we have made of the facts renders that contention without support. The bar was attached to and rose from the bed and did not accrete to and become a part of his lands. It was not deposited against and did not extend out from his shore lands or Island 86.

Appellee contended that the bar was an accretion to Island 87, but on the facts stated his claim, like Chambers', was without support. There is no doubt, however, of his ownership of all of Island 87, except the 50 acres conveyed by Lacy to Kiger and by mesne conveyances to Winford and Wineman. That tract is given two different descriptions in the deed from Lacy to Kiger. The forepart of it reads thus:

"* * * All that part of the west half

of sections six (6) and seven (7), and all the lands lying in front of the plantation known as 'Rose Bank' in Township Eighteen (18) in Range 2 South 1 East and 1 West being part of the Island of the Mississippi River commonly called Island 87. And the accretions thereto, down to the center of the channel of the Mississippi River, and South and East of the Chute, between said Island 87 and the main land, covering and embracing all the lands in front of the said 'Rose Bank Plantation' containing 50 acres or more."

[2, 3] Under the Arkansas rule, announced in the cases supra, Lacy's title as owner of the island extended to high water mark. He had nothing beyond that which he could convey. The bed of the stream to the center of the channel of the river did not belong to him. But he could convey all that part of the island lying in front of Rose Bank Plantation. Griffin testified that Rose Bank Plantation must have had in the neighborhood of one-half mile of frontage on the chute that is mentioned in the deed, that the only front on this chute, which was the original bank, was in west half of 6; that witness owned the east half of 6 and Rose Bank Plantation the west half of 6, both fronting on the chute; that the entire frontage of the Rose Bank Plantation was one-half mile fronting on the chute; that the river along the front of the Rose Bank Plantation was then about 300 or 400 yards from the chute; that Island 87 was 300 or 400 yards in there between the chute and the river. No other witness testified as definitely on this subject. Counting the distance across the island, the tract conveyed would be about a half-mile long east and west, to contain 50 acres. W. H. Lacy testified that he had lived in that vicinity since 1874, that he purchased Island 87 in 1886 and resided upon it until 1898, that before giving the mortgage under which Griffin acquired his title, witness had conveyed a portion of the island to B. G. Kiger, that he conveyed that portion of the island which was in front of Rose Bank Plantation, and that it was his agreement and intention by that deed to convey all of the island in front of Rose Bank Plantation to the water in the Mississippi proper, that at the time witness conveyed to Kiger, Island 87 extended downstream to Brook's Mill, which is about three-quarters of a mile below the lower line of the Kiger, Rose Bank property. The description in the Kiger deed continues:

" * * * Hereby conveying and intending to convey all of said Island 87, beginning at the half section line of said Section 6, where said line crosses said Chute, thence south with said line to the center of the channel of the Mississippi River, thence south with the center of the channel of said River to the South boundary line of said Rosebank Plantation."

This description by metes and bounds was ineffectual. As said, Lacy could not convey to the center of the channel, and the south boundary line of Rose Bank Plantation did not extend to the center of the channel. The boundary line thus attempted to be given did not close. We think it clear that Lacy only conveyed, and only intended to convey, to Kiger that part of Island 87 lying between the north and south center line of section 6 projected south across the island and the west line of section 6 projected south across the island. No part of the island west of that tract passed to Kiger.

[4] The territory composing Island 87 has never been sectionized, and reference to it in deeds, pleadings and proof as though it had been is inappropriate and confusing. It is known and appropriately designated and described as Island 87. But Winford and Wineman insist that appellee did not get title to any part of the island west of the 50-acre tract, because the deed on foreclosure sale to him described the property sold and conveyed as "a tract of land about 400 acres, some more or less, on Island 87, in Sections 4 and 5 in Twp. 18 S. Range 1 East." But appellee went into possession in 1907, and thereafter exercised acts of ownership over the whole island, except the 50 acres, paid the taxes on it, excluding only the 50 acres, and Kiger and his grantees never paid taxes on but 50 acres of the island. There were no sections 4 and 5 in Twp. 18 S., Range 1 East, and naming them in the deed was futile, and neither added to nor restricted the description, "a tract of land about 400 acres, some more or less, on Island 87." The conduct of all interested parties for more than twenty years and until this litigation arose was consistent with the claim that all of the island except the 50 acres belonged to appellee; and to now hold otherwise would be in contravention of their evident understanding and construction, in opposition to their conduct and inequitable.

[5] Winford and Wineman make further affirmative claims. As Island 87 extended down the river it came in contact with Goose Island. For several years there was a chute between them, through which boats for a time passed and entered the chute be-

tween Island 87 and the mainland, which latter chute continued on down between the mainland and Goose Island. In time the chute between the two islands closed. As the sandbar to the south of Island 87 made on down the river it came opposite Goose Island, and finally that island and the bar joined together. On this Winford and Wineman claim, that they own Goose Island (a) by virtue of a deed from W. H. Lacy conveying it to them after this suit was instituted, but there is no evidence that Lacy owned or had ever acquired it; (b) that the island was an accretion to lands on the Arkansas side which they had acquired, but the evidence convinces that it is an island and not accreted lands; and (c) that Goose Island occupies the place of section 12 which washed away, that Winford and Wineman and their grantors owned section 12, and that Goose Island having later formed in the place of section 12 Winford and Wineman became owners of the reformed lands under the Arkansas statute (Act April 26, 1901, Kirby and Castle's Digest, § 5729), reading:

"That all land which has formed or may hereafter form, in the navigable waters of this state and within the original boundaries of a former owner of land upon such stream, shall belong to and the title thereto shall vest in such former owner, his heirs or assigns, or in whoever may have lawfully succeeded to the right of such former owner therein."

Winford and Wineman prayed that their title to these reformed lands or accreted lands, or Goose Island, as it might be, in section 12, be quieted and confirmed in them.

While it is true that a plaintiff, to maintain a suit to quiet title, must aver and prove his title, it is also true that the complaint must show that defendant asserts some adverse claim or interest. If he do not, there is nothing to try as against him. The nature of the suit is to enable the plaintiff owner to bring into court one who asserts an adverse claim or interest in the property in controversy. The adverse claim constitutes the issue to be tried. Without it there is no issue. There is no allegation in the answer or cross-complaint of Winford and Wineman that Griffin claimed title to or any interest in Goose Island. It is true that Griffin's complaint alleged that he was the owner of certain sections and parts of sections (which did not exist), including section 12, but it was further alleged that they comprised what is known as Island 87. He made claim only to that island. It may

be that the west end of Island 87 extended into what is called section 12, but as to that the record is not clear. In any event, there was no evidence, even Griffin did not testify, that he made claim to what is known as Goose Island or any part of it. Conceding, then, without deciding, that Winford and Wineman own Goose Island, they were not entitled to a decree quieting their title thereto as against Griffin, because he made no claim to it or any part of it. The only right which we conceive either of the parties had in that respect was to have the boundary line between the two islands settled and fixed, if that be in dispute. But there was no testimony on that subject. The record strongly suggests that the line on which the chute between Island 87 and Goose Island closed, must be plainly visible and can be easily traced. From what has been said it is apparent that Winford and Wineman could have no controversy with Griffin over any part of the bar.

We find nothing in the record that would support findings in favor of either appellant, and the decree of dismissal as to them is Affirmed.