KANSAS CITY FIBRE BOX COMPANY v. F. BURKART MANUFACTURING COMPANY.

Opinion delivered November 16, 1931.

*William G. Holt* and *Carmichael & Hendricks,* for appellant.

*Sam T. Poe, Tom Poe* and *McDonald Poe,* for appellee.

MEHAFFY, J. The appellee brought suit in replevin against W. E. Smith, alleging that it was a Missouri corporation authorized to do business in Arkansas, and that it was the owner and entitled to the immediate possession of 375,727 feet of cottonwood lumber located and stacked on section 12, township 2 south, range 11 west, in Pulaski County; that said lumber was of the value of $22.50 per thousand feet, or a total value of $8,453.85; that W. E. Smith was in possession of all the lumber described, and that appellee had been damaged in the sum of $2,500, and that its cause of action accrued within one year, and prayed for recovery of the lumber and $2,500 damages. An affidavit in proper form to obtain order of delivery was filed.

W. E. Smith answered, denying that appellee was the owner and entitled to the immediate possession of the lumber mentioned in the complaint, and denied that he was in unlawful possession of same. He stated that he was not the owner of said property; that said lumber had been sold to the Kansas City Fibre Box Company long before any controversy arose; that said lumber had been checked up by it and taken into its possession, and that bill of sale had been made and delivered; that the Kansas City Fibre Box Company had agreed to buy his entire output; and that the Kansas City Fibre Box Company was the real party in interest and is a necessary party to the suit.

The Kansas City Fibre Box Company filed a petition to be made a party defendant. It stated that it was a corporation organized under the laws of Ohio, doing business in the State of Kansas, and that it was the owner of all the lumber seized and replevied in this case and now claimed to be held by the appellee; that

the petitioner is the real party in interest and that it was necessary that it be made a party in order that justice might be done; that it was willing to make a bond and comply with the order of the court.

Appellee had filed bond, and the property described in appellee's complaint had been taken by the sheriff and delivered to the appellee. The court ordered that appellant be made a party and permitted to give bond in the sum of $18,000 within 48 hours.

The appellant executed bond, and the lumber was delivered to it, and by it shipped out of the State and sold.

The jury returned a verdict in favor of appellee for the possession of the property or its value, $8,446.89, and judgment was entered accordingly. The case is here on appeal.

The following agreement was entered into: "It is agreed by and between Sam T. Poe and Tom Poe, attorneys for plaintiff, and Carmichael & Hendricks, attorneys for the defendant and for the intervener, that plaintiff's deraignment of title to the fractional east half, northwest quarter, section 12, fractional northeast quarter of section 12, fraction north half, southeast quarter, section 12, all in township 2 south, range 11 west, heretofore filed in this case may be introduced in evidence as deraigned with the same effect as if plaintiff had introduced certified copies of all instruments of conveyance as set out in the deraignment of title; and that the defendant and the intervener may introduce in evidence deed, or copy thereof, from Charles W. W. Hogue to John Kaufman, dated June 9, 1900; and special warranty deed, or copy thereof, from John A. Kaufman and wife, Marguerite, George K. Kaufman and wife, Nettie May, to W. A. Case, George R. Case and H. R. Case, dated January 23, 1929.

It is expressly agreed that all other rights or evidence of the parties may be introduced subject to objection, and that this agreement is made for the purpose of saving expense.

There was then introduced in evidence a decree of the Pulaski Chancery Court, entered February 20, 1890, in an action between *Sue E. Banjamin* v. *D. F. Rose et al.*, also a decree of the Pulaski Chancery Court entered on January 22, 1927, in the case of *F. Burkart Mfg. Co.* v. *Oscar Winn et al.*

The controversy is with reference to the ownership of land and possession of the land from which the lumber was cut. It is claimed by the appellee that it is the owner of sections 12 and 13, and the Cases, who sold the timber to Smith, claim to be the owners of section 13.

Appellees claimed, and introduced evidence to show, that there were three tracts of original land in section 12, and that the timber was cut on accretions to these original tracts.

The evidence on behalf of appellees showed that it was the owner and in possesson of the land from which the timber was cut. This was contradicted by evidence offered by the appellant. It would serve no useful purpose to set out the evidence in full. It was in conflict, and therefore a question for the jury. The timber in question was cut from land which at one time formed the bed of the Arkansas River.

It is first contended by the appellant that the appellee claims without any evidence that this land was not formed by accretion to Hogue Island or any other land in section 13, but was formed by accretion to section 12.

Martin testified that he had known the land since 1912; that he made a survey for Dan Rose, who owned the property at that time; he had been over and around there a number of times. In 1826, when the Government made a survey, there was large timber growing there. Martin, from the map and decree, pointed out the lands and showed which was accretion to a portion of section 12. He also pointed out where Hogue Island was located, and pointed the particular land in 12, 13 and 14, and stated that it was allotted to Mr. Rose long before Hogue Island had accreted to his land; that this was included in the

survey ordered by the chancery court in 1890; also that everything in the red line was accretion; pointed out the three pieces of original land in section 12, and testified particularly as to the description of the original land and the accretion.

There is no dispute about the law with reference to accretion. The appellant calls attention to the case of *Nix* v. *Pfeifer,* 73 Ark. 199, 83 S. W. 951, and says that the burden was upon appellee, and that appellant's witnesses should be believed and accredited more than the others, because they knew what they were talking about. The case of *Nix* v. *Pfeifer, supra,* was an appeal from the chancery court, and was therefore tried here *de novo.*

The case at bar was tried in the circuit court, and the questions of fact submitted to the jury, and the rule here is that, if there is any substantial evidence to support the verdict of the jury, it is binding here, although the preponderance of the evidence may appear to the court to be against the verdict of the jury. It is the province of the jury to decide questions of fact; they are the judges, not only of the credibility of the witnesses, but the weight to be given to their testimony. The principles of law are well settled.

As was said in the case of *Nix* v. *Pfeifer, supra*: "The law governing the case is clearly established and entirely free from difficulty, and we need search no further than the decisions of this court to determine the rights of riparian landowners so far as the questions involved in this suit are concerned.

"Land formed by gradual and imperceptible accretion or by gradual recession of the water, belongs to the owner of the contiguous land to which the addition is made. The river line is the natural boundary, and its gradual advance or retreat carries the owner's line with it, except in case of an avulsion, or sudden or perceptible change of the water course, in which latter case the line remains at the old water line, and becomes fixed by it, not subject to further change by the caprice of the river." *Nix* v. *Pfeifer,* 73 Ark. 199, 83 S. W. 951.

We deem it unnecessary to call attention to further authorities as to what constitutes accretion, not only because it is so well settled, but because there is no dispute about the law.

It is next contended by the appellant that the Cases held the land from which the timber was cut in adverse possession at the time the timber was cut. We think the overwhelming weight of the evidence shows that the land from which the timber was cut was not held in adverse possession. Smith and Case both testified as to the timber cut on section 12. Smith said it was good timber, and that he was going to take a chance. The letter written by Poe to Case, and Case's reply, clearly show that, when Case built his fence, he was not claiming the land or the timber, but built the fence for the purpose of pasturing his stock. At any rate, it was a question of fact as to whether they held it in adverse possession, and the jury's finding on this question is conclusive.

The court gave, at the request of appellant, the following instruction: "You are instructed, if you find from the evidence that the Cases sold the timber to the defendant, Smith, or if you find they are not complaining about the timber Smith cut, although it was not included in Smith's deed, and find that the Cases are in adverse possession of the land from which the timber was cut and were so in adverse possession at the time of the cutting, to find for the defendant and the intervener."

Since that question was settled against appellant's contention, it becomes unnecessary to discuss or decide the question whether replevin can be maintained for timber or lumber cut from land in adverse possession of another.

The next contention of appellant is that the measure of damages was the stumpage value, instead of the value at the mill. Assuming that the land from which the timber was cut belonged to the appellee, as the jury found, and taking into consideration the letters heretofore referred to, and the fact that the land was fenced some

years ago by the appellee, and that appellant, without right and as to a portion of the timber without any claim of right, but merely taking a chance because it was good timber, we think the proper measure of damages was its value in its improved state.

If this were not true, a trespasser or wrongdoer who wished to purchase timber from an owner who did not want to sell, could wrongfully cut the timber, convert the lumber to his own use, and pay for the stumpage value, thereby wrongfully depriving the owner of his property.

The law is well settled in this State, that where timber is cut by an innocent trespasser, that is, where the trespasser acts in good faith, believing he has a right to cut the timber, then the stumpage value would be the proper measure of damages; but it is equally well settled that, where a trespasser who does not act in good faith, and is not an innocent trespasser takes timber from another's land, the wrongdoer is liable for the value of the timber so taken, in its improved state.

The case of *Eaton* v. *Langley*, 65 Ark. 448, 47 S. W. 123, 42 L. R. A. 474, deals with the question of an innocent trespasser, and, after deciding what the measure of damages is in that case, the court said: "Hence the law protects the unintentional trespasser in such cases by limiting the right of the owner to recover. * * * As to the extent of this limitation, the authorities are not agreed. But we think that, inasmuch as this is an exception to the general rule made for the purpose of protecting the unintentional trespasser, it should be allowed to prevail only to the extent it is necessary to give protection, and that the owner in actions for possession of personal property in the new form into which it has been converted, inadvertently, under a *bona fide* but mistaken belief of right, in case a delivery cannot be made, is entitled to recover the value of the property in its new form, less the labor and material expended in transforming it, provided the expenditures do not exceed the increase in value which was added to the trans-

formation, in which event he should recover the value of the property in its new form, less the increase."

It is clear from the opinion in the case above mentioned that it has, and was intended to have, application to an innocent trespasser. The evidence in this case we think clearly shows that the timber was not cut in good faith, and shows that Smith was not an innocent trespasser.

We think the correct rule is stated in 1 C. J. 389: "A wilful trespasser is not entitled to any compensation, allowance, or mitigation of damages on account of the labor expended or materials added by him in improving or increasing the value of the property. * * * So, if the owner has regained the possession of his property in its improved condition, such trespasser cannot maintain an action against him to recover for such labor or materials; and if the owner brings an action to recover the property, he is, if entitled to recover at all, entitled to recover it in the condition in which he finds it, and defendant cannot claim any compensation or allowance for his labor or materials."

The authorities do not seem to be in entire harmony where the action is replevin and the wrongdoer has disposed of the property so that it cannot be delivered, but we think the rule here announced is the only just and fair rule where the property was not taken in good faith.

Appellant states that Smith testified that he did not know, until the trial of the case, of Mr. White's statement that he was going to cut on 12. He might not have known that, that is, he might not have known where 12 or any other particular section was, but he admits himself that he did not try to find out where the lines were; he had, through White, purchased the timber, and he knew that he did not have any right to cut on 12. He also testified that he did not have the line run until after the cutting was done. We think the evidence clearly shows that Smith was not an innocent trespasser. We agree with appellant that it has the same right that W. E. Smith

would have had, but we have already shown that W. E. Smith had no right.

It is next contended by appellant that the court erred in giving instructions 1, 2, 3, 5, 6 and 11.

Instruction No. 1 is as follows: ''If you find from the preponderance of the evidence, under the instructions of the court that in 1890 and ever since that time, and prior thereto, there were three tracts of original land in section 12, township 2 south, range 11 west, in Pulaski County, Arkansas, described as follows, to-wit: North half southeast quarter, east half northwest quarter and fractional northeast quarter, and that all of the land lying between the above described tracts and the eastern, western and southern boundaries of the land from which the timber, out of which the lumber in controversy was made, was cut and removed, had been washed away and accreted or built back to the three above described tracts of land, and that such accretions include all the land from which the timber, out of which the lumber in controversy was made, was cut and removed, and that plaintiff owned the three above described tracts, and the accretions belonging thereto, and was entitled to the possession of same at the time the timber was cut and removed therefrom and now owns said land, then you are instructed to find for plaintiff; unless you find the land from which the timber, out of which the lumber in controversy was made, was cut and removed, was accretion to a tract of original land in section 13 or 18, or unless you find that W. A. Case and others were in good faith asserting an adverse claim of ownership to the lands from which the timber was cut and were in actual possession thereof, lawfully obtained, when the timber was cut.''

We do not think that this instruction is either confusing or contradictory, but it was as favorable to appellant as it had any right to ask. The appellant objected especially for the reason that appellee cannot accrete except toward the now river as presently located; that the original land in 1890 was accretion and not the basis for accretion; that prior to that time the Cases, successors in title, had title and possession to the land.

These were questions of fact settled by the verdict of the jury.

Appellant argues that said instruction was erroneous because it attempts to state too many of the facts and ignores other facts. In the first place, we do not think the instruction is open to this objection, and, in the next place, if it had been, appellant should have made this specific objection, which it did not do.

Instruction No. 2 reads as follows: "You are instructed that, if you find from a preponderance of the evidence, under the instructions of the court, that W. A. Case and others in building the fence built the fence with no intention of asserting any claim of title to the land across or upon which it was built adverse to plaintiff, F. Burkart Manufacturing Company, and that W. A. Case and others only intended to use the property for pasturage purposes, and that at the time the fence was built, or thereafter, W. S. Case expressly recognized the title of plaintiff, F. Burkart Manufacturing Company, and such possession, use and occupancy of the land as W. A. Case may have obtained thereby did not constitute adverse possession, unless W. A. Case brought the knowledge home to plaintiff, F. Burkart Manufacturing Company, by word or act that he claimed it adversely to plaintiff, F. Burkart Manufacturing Company, and for himself.

"You are also instructed that the burden is on defendant and the intervener to show by a preponderance of the evidence W. A. Case gave notice to plaintiff, F. Burkart Manufacturing Company, of his adverse claim."

The specific objection to this instruction was that the Cases did not have to occupy the property for the full period of seven years if they were in actual, open, notorious possession for any length of time, etc. The finding by the court that the Cases were not in adverse possession answers this objection. We think the evidence conclusively shows that the Cases were not holding this land in adverse possession.

Instruction No. 3 reads as follows: "If you find from a preponderance of the evidence, under the instruc-

tions of the court, that plaintiff, F. Burkart Manufacturing Company, was in actual possession of the land from which the timber was cut by defendant, W. E. Smith, and out of which the lumber involved herein was made, and that plaintiff had owned the land since July 8, 1918, and had it inclosed with a fence, and that defendant, W. E. Smith, and the intervener, Kansas City Fibre Box Company, or their grantors, W. A. Case, and others, broke through the inclosure against the consent of plaintiff, the entry was unlawful and such entry and subsequent possession as may have been obtained thereby did not dispossess nor oust the possession of plaintiff, unless you find that W. A. Case was already in possession of the land.''

The specific objection to this instruction was that there could be no unlawful fence breaking where there was not an inclosure. The undisputed evidence shows that the Cases did cut the fence. It is true the Cases had built a fence there, but, as we have already shown, Case testified that he did it for the purpose of using it as a pasture, and he was not claiming the timber.

Instruction 5 reads as follows: ''The court instructs the jury that the defense of adverse possession is an affirmative defense, and the burden of proof is on the defendant and intervener to establish such adverse possession by a preponderance of the evidence.''

Number 6 reads as follows: ''If you find from a preponderance of the evidence, under the instructions of the court, that plaintiff, F. Burkart Manufacturing Company, was the owner and entitled to the possession of the land from which the timber, out of which the lumber in controversy was made was cut and removed at the time the timber was cut and removed from the land, you are instructed to find for plaintiff for the possession of the lumber you find was cut and removed or its market value in its improved state, at the time of the filing of this suit, at whatever price or value you find the evidence in this case shows that lumber was worth at the mill when this suit was filed.''

Number 11 reads as follows: "The word 'accretion' means the slowly and imperceptible building to original lands by the water receding therefrom and filling in by deposits of sand, mud, or vegetation which gradually and slowly raises the surface of the lands and thereby brings it above water level. The accretion must be toward the river at the time the accretion is added."

We have carefully considered all the instructions, and, when considered as a whole, they constitute a correct guide for the jury.

It is next contended by the appellant that the verdict is excessive, and that no attention was paid to the fact that it cost $5 per thousand to haul the lumber from the yard to the railroad. The court, in instruction No. 6, told the jury that, if they should find for the appellee, their verdict should be for the possession of the lumber, or its market value at the mill. This was a clear statement to the jury that they should find the value of the lumber at the mill.

Witness Denison testified that the lumber was worth $25 per thousand feet at the mill and $30 per thousand at the railroad.

Appellant's witnesses testified that the stumpage value was $3.50, and that appellant had paid Smith $17.50 on the yard, and that it was worth $22.50 on board the cars.

It thus appears that there was a conflict in the evidence as to the value, ranging from $17.50 on the yard to $25 per thousand on the yard, and the verdict of the jury was necessarily based on the evidence of the value on the yard. They were expressly told in the instructions that they must do this.

Instruction No. 8, requested by appellant, told the jury that, if appellee recovered, it could only recover the lumber stacked on section 12 at the time the suit was brought, and that it was not entitled to recover this unless it showed that the particular lumber belonged to it and was in its possession.

Appellant finally contends that its peremptory instructions should have been given. What we have already said answers this contention.

The weight of the evidence and the credibility of the witnesses was for the jury, and they found that the appellee was the owner of the land from which the timber was cut, and that Smith went upon said land and cut the timber without right.

Appellee prosecutes a cross-appeal and asks a modification of the judgment, claiming that he is entitled to interest, and calls attention to the case of *Bradley Lumber Co.* v. *Hamilton,* 117 Ark. 127, 173 S. W. 850.

In the Bradley Lumber Company case the court said, referring to another case: "In that case the court held that, where damages were capable of ascertainment by reference to reasonably certain market values and various items of damage have been duly and adequately presented, and payment demanded before suit is commenced, the claimant is entitled to interest from the time of such demand." The facts in this case do not bring it within this rule.

In the case of *Griffith* v. *Ayer-Lord Tie Co.,* 109 Ark. 223, 159 S. W. 218, the court held that the instrument under consideration conveyed the absolute title to the appellee, and that he was therefore entitled to recover the value with 6 per cent. interest.

In the instant case, no demand was made for the payment of the timber, but it was simply a suit in replevin, the purpose of which was to recover the timber, and the statute provides that in suits of this character the jury must assess the value of the property as also the damages for the taking or detention wherever by their verdict there will be a judgment for the return or the recovery of the property.

Section 8654 provides that a judgment for the defendant may be for the return of the property or its value in case the property cannot be had, and damages for the taking and withholding of the property.

The appellee in this case brought suit for the recovery of the property and damages for its detention. It

had the right to introduce proof to show it had been damaged by the wrongful taking and detention of the property, but it was not entitled in this case to recover interest. *Brown* v. *Vaughan, ante* p. 364.

The judgment is affirmed, both on appeal and cross-appeal.