**R. V. KIMBLE, Plaintiff,**

v.

**ANDERSON–TULLY COMPANY,
Defendant.**

No. LR–2860.

United States District Court,
E. D. Arkansas, W. D.

Jan. 21, 1955.

Bailey, Warren & Bullion, Bruce T. Bullion, Little Rock, Ark., for plaintiff.

Williamson & Williamson, Lamar Williamson, Monticello, Ark., for defendant.

LEMLEY, District Judge.

This cause comes on for hearing upon the defendant's motion for summary judgment, filed herein pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which motion has been submitted upon the record herein, numerous exhibits, and written briefs.

The plaintiff, an individual citizen of Mississippi, brought this action against the defendant, a Michigan corporation, to establish his alleged title to approximately fifteen hundred acres of timber land in Chicot County, Arkansas, riparian to the right descending bank of the Mississippi River, to enjoin certain alleged trespasses of the defendant, and to secure an accounting for certain timber which he claims that the defendant has wrongfully cut and removed from said lands. It is the contention of the plaintiff that the area in controversy formed as true accretion to Island 87 in the Mississippi River, which island apparently formed in the River after the State of Arkansas was admitted to the Union, and which island the plaintiff

claims to own.[1] The defendant contends, on the other hand, that said area is not accretion to Island 87, but formed as an independent island in the River, and that, as such an island, it became the property of the State of Arkansas, and that the defendant is the owner thereof by virtue of a deed issued to it by the Arkansas State Land Commissioner in November, 1952.[2] While the defendant in its answer did not set up a formal counterclaim, it did allege facts which, if established, would tend to show title in itself, and it prayed not only that the plaintiff's complaint be dismissed, but also that its own alleged title be quieted and confirmed, and that it be adjudicated that the deeds under which the plaintiff claims constitute neither title nor color of title to the area in question. In its pending motion, however, the defendant seeks no affirmative relief, but simply the dismissal of the complaint.

In support of its motion the defendant contends that in certain litigation in this Court, which terminated in the decision of the Court of Appeals in Winford v. Griffin, 8 Cir., 1 F.2d 224, decided in 1924, it was authoritatively determined that the lands here involved were formed in accordance with the defendant's theory, above outlined, and were not formed in the manner contended by the plaintiff; that the latter is the direct privy in estate of one John W. Griffin, who was plaintiff in the former litiga-

tion, and who there advanced the identical theory which the plaintiff here advances; that the defendant here is in direct privity with one J. T. Chambers, who intervened in said former litigation contending that the area in controversy had formed as accretion to other lands known as Island 86; that the Court determined that said area was not accretion to either Island 86 or Island 87 but was a third island belonging to the State; and that since the parties here are in privity with the parties to the earlier litigation, both are mutually bound by the judgment therein and are estopped to question it. Hence, the defendant argues that since the plaintiff must recover, if at all, upon the strength of his own title, and since he is estopped to assert that title, his present action must be dismissed.

In opposition to the motion the plaintiff insists that the Griffin-Winford litigation did not amount to an adjudication that the lands here involved, or at least all of them, were formed as an island; and while he admits that he is in direct privity with Griffin, and while he admits further that the defendant now owns, through mesne conveyances, whatever interest Chambers may have had, he contends that the defendant's claim of privity with Chambers is factitious,[3] and that in actuality the defendant is asserting the title which it obtained from the State of Arkansas; that the State was

1. It is well settled law in Arkansas that accretions to riparian land brought about by the characteristic channel changes of the Mississippi and other rivers are private property and belong to the riparian owners. See our opinions in Banks v. Chicago Mill & Lumber Co., D.C.Ark., 92 F.Supp. 232; Kimble v. Willey, D.C.Ark., 98 F.Supp. 730; Bryant v. Chicago Mill & Lumber Co., D.C.Ark., 120 F.Supp. 463; Ussery v. Anderson-Tully Co., D.C. Ark., 122 F.Supp. 115; and cases therein cited.

2. Under Arkansas law, lands which form as islands in navigable streams become, subject to an exception not here pertinent, the property of the State and subject to the latter's disposition, as pro-

vided by the Island Act of 1917. Acts of Arkansas 1917, No. 282; Ark.Stats. 1947, Section 10–601 et seq.

3. Defendant's claim of privity with Chambers is based upon the following transactions reflected by the record before us: In 1947 Judge Fred P. Branson, formerly of the Supreme Court of Oklahoma, filed an application with the State Land Commissioner for an "island deed" covering the area in controversy; during the same year he also became the owner of Island 86 and certain lands to the north and east thereof as a remote successor in title to Chambers; in 1948 Branson conveyed to Lamar Williamson, Trustee, that portion of Island 86 and all accretions thereto lying south and west of a

not bound by the decision in Winford v. Griffin, and that the defendant, as the State's successor in interest, is likewise not bound by that decision. Hence he contends that under the doctrine of "mutuality of estoppel", he is not bound thereby.[4] Plaintiff also makes some additional arguments which we do not stop now to enumerate.

 In taking up the defendant's motion we deem it well to call attention to certain well settled general principles which are applicable to motions for summary judgment and which we think should always be kept in mind by the Courts in passing upon such motions: In Hurd v. Sheffield Steel Corporation, 8 Cir., 181 F.2d 269, 271, the Court said: "The proceeding on motion for summary judgment is not a trial but in the nature of an inquiry in advance of trial for the purpose of determining whether there is a genuine issue of fact. Rule 56, Federal Rules of Civil Procedure, * * contemplates prompt disposition of an action where there is in fact no genuine issue, thus avoiding the necessity of a futile trial. * * *. The burden of proof is on the moving party * * *. If it appears from the pleadings, affidavits, admissions or depositions that there is no genuine issue as to any material fact and that the issue is one of law, then if the law so warrants a summary judgment should be entered. The question of the sufficiency of the evidence raises an issue of law and if, under the facts, the court would be required to direct a verdict for the moving party, then a summary judgment should be granted. * * *"

 In passing upon a motion for summary judgment it is not the function of the Court to try disputed questions of fact, but merely to ascertain whether or not genuine issues as to material facts exist; the Court should not grant such a motion unless it is fully satisfied that there is an absence of genuine and material factual issues, and the burden is upon the movant to clearly establish that he is entitled to judgment as a matter of law; the case is viewed in the light most favorable to the party opposing the motion, and all doubts are resolved in his favor; upon appeal from an order granting summary judgment the record is viewed in the light most favorable to the appellant. 3 Barron & Holtzoff, "Federal Practice & Procedure", Sections 1234, 1235; Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101; Sprague v. Vogt, 8 Cir., 150 F.2d 795; Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881, 883; Bryant v. Chicago Mill & Lumber Co., 8 Cir., 216 F.2d 727; see also our own opinions in United States v. Haynes

---

certain fence, which had been constructed by the plaintiff, and which fence the plaintiff contends to be his northern boundary; the conveyance from Branson to Williamson also included all of the former's rights under the then pending application to the State Land Commissioner; in 1951 Mr. Williamson, as trustee, quitclaimed to the defendant all of the rights, if any, which he had acquired by virtue of his deed from Judge Branson.

4. The doctrine of mutuality of estoppel is stated as follows in 50 C.J.S., Judgments, § 765, p. 293; "Subject to some exceptions based on reason and practical necessity, it is a rule that estoppels must be mutual; and, therefore, a party will not be concluded, against his contention, by a former judgment, unless he could have used it as a protection, or as the foundation of a claim, had the judgment been the other way; and conversely no person may claim the benefit of a judgment as an estoppel on his adversary unless he would have been prejudiced by a contrary decision of the case." Arkansas decisions recognizing and applying that doctrine are Treadwell v. Pitts, 64 Ark. 447, 43 S.W. 142; and Hogan v. Bright, 214 Ark. 691, 218 S.W.2d 80; see also the concurring opinion of Justice Frank G. Smith in McCarroll v. Farrar, 199 Ark. 320, 331–332, 134 S.W.2d 561. As we understand it, the defendant does not dispute the rule that "estoppels must be mutual", but contends, as we have indicated, that both of the parties hereto are mutually estopped by the judgment in Winford v. Griffin, supra.

School District No. 8, D.C.Ark., 102 F. Supp. 843, 848, and Bryant v. Chicago Mill & Lumber Co., supra, 120 F.2d 463, 466–467. With these principles in mind we proceed to determine whether defendant's motion should be sustained or whether it should be overruled.

The underlying issue between the parties here is as to the nature and origin of the area in controversy; that issue, which is almost entirely factual, is evidently sharply disputed, and it is obvious from the record, and from what we know about such cases from our own experience, that a trial thereof will be long, laborious and expensive. The defendant asserts, however, that its motion involves no factual questions and tenders a purely legal issue which is completely dispositive of the plaintiff's claim, and that should said motion be sustained, the time, effort and expense above mentioned will be avoided.

■ While there can be no question that the defense of res judicata or estoppel by judgment can, in a proper case, be raised and disposed of by proceedings under Rule 56, 3 Barron & Holtzoff, op. cit., Section 1246; A.B.C. Fireproof Warehouse Co. v. Atchison, Topeka & Santa Fe Ry. Co., 8 Cir., 122 F.2d 657; Billings Utility Co. v. Advisory Committee, Board of Governors, 8 Cir., 135 F.2d 108; and while in Bryant v. Chicago Mill & Lumber Co., supra, we sustained a motion for summary judgment filed by the defendants, and thus avoided the necessity of solving an accretion problem quite similar to the one involved here, still we do not believe that this is a proper case for summary disposition.

■ Without undertaking to discuss at this time the pros and cons of the defendant's motion, we are satisfied that said motion, under the facts disclosed by the record before us, presents a close and doubtful question of Arkansas law, and one with respect to which we have found no Arkansas cases directly in point; as to how that question should be answered,

we are not, at the present time at least, satisfied either way. Under such circumstances we feel that the proper course to be pursued is to overrule the motion and let the case be tried on its merits. Should it be determined upon such trial that the area in controversy was in fact formed as the defendant contends, there will in all probability be no occasion to consider the legal question which the motion presents; and, moreover, it occurs to us that some other situation might develop in the trial which would render such consideration unnecessary. Of course, if, in the last analysis, it should become necessary for us to pass upon said question, there will then be time enough to decide it.

■ While, as stated, we sustained a motion for summary judgment in the Bryant case, that case can, in our opinion, be properly distinguished from this on the basis that there we were thoroughly satisfied as to the law of Arkansas as applied to the undisputed facts upon which the defendants' motion was based, whereas here we are not so satisfied. We do not believe it to be good policy on the part of federal district courts, or one of which the Court of Appeals for this Circuit would approve, to decide, in connection with motions for summary judgment, doubtful questions of state law which may be rendered moot by a full development and determination of the factual issues. It must be kept in mind that after all the judgment of a federal court upon a question of purely local law is, in final analysis, simply a "forecast", and is liable to be immediately overturned by an authoritative decision by the state courts. See Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 499, 61 S.Ct. 643, 85 L.Ed. 971. We believe that wherever possible such forecasts are to be avoided. Cf. Union Carbide & Carbon Co. v. White River Distributors, Inc., D.C.Ark., 118 F.Supp. 541, 550–551.

It is, of course, true that at times federal courts are required to pass upon diffi-

cult and doubtful questions of state law; we were confronted with such a situation in Kimble v. Willey, supra, and we decided the controlling question of Arkansas law there presented without the aid of any Arkansas Supreme Court decision which we considered to be in point. But our decision there was not rendered in connection with a motion for summary judgment but after a plenary trial on the merits. Moreover, it should be noted that in that case, as in this, there was present a difficult question of res judicata which we found it unnecessary to determine in view of our holdings on other issues.

■ We do not overlook the substantial savings in time, money and effort that would be effected should we sustain this motion, provided that we were right. But should we improperly sustain it and be reversed, nothing would be gained, and the parties in all probability would be subjected to the additional trouble and expense of two appeals. In this connection we feel that the language of the Court in Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135, is applicable here; it was there said: "We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable; but refusal to grant a summary judgment is not reviewable. Such a judgment, wisely used, is a praiseworthy time-saving device. But, although prompt despatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than delay. * * * The district courts would do well to note that time has often been lost by reversals of summary judgments improperly entered. * * *"

Let an order overruling the motion be entered.