[Civ. No. 9723. Third Dist. Aug. 3, 1960.]

K. R. NUTTING, Plaintiff, v. GERALD F. RAUB et al., Respondents; J. D. WELCH et al., Cross-defendants and Appellants.

504

Cushing, Cullinan, Duniway & Gorrill and Hewitt & Mc-Bride for Appellants.

Manwell & Manwell for Respondents.

PEEK, J.—This is an appeal from a money judgment awarded to J. D. Welch and E. C. Welch, a copartnership (hereinafter referred to as Welch) against Gerald F. Raub and Minnie M. Raub (hereinafter referred to as Raub).

The original proceedings were instituted by K. R. Nutting. The Nutting complaint sought damages against Raub, alleging that he had trespassed upon certain timber lands owned

by him and had removed therefrom specified quantities and varieties of timber of a total reasonable value of $54,525.39 for which judgment was prayed. It is conceded by the parties to this appeal, and was conceded throughout the trial of the action, that Nutting filed his complaint after he had assigned his cause of action to Welch. Therefore, for practical as well as sound legal reasons, this original pleading was ignored by the trial court and hence will not be considered further by us.

The real controversy was and is between Welch and Raub. It is to be noted that although Raub answered the original complaint, he also requested and was granted leave by the court to bring in Welch as cross-defendant. This cross-complaint alleged that he (Raub) was the owner of timber land; that prior to August of 1951 Nutting had owned timber land bordering his land; that prior to August of that year Nutting had transferred this land to Welch; that in 1947 Raub had built a sawmill on his land and engaged in harvesting the timber thereon and manufacturing merchantable lumber therefrom; that prior to August of 1951 Welch falsely represented to Raub that he had surveyed the dividing line between the Raub and Welch properties and ascertained that Raub had unlawfully removed timber from the Welch land and threatened that unless Raub would compensate for the timber wrongfully taken, Welch would begin an action against him for damages; that relying on the Welch misrepresentation and duress (the threat of litigation), Raub had executed a deed and bill of sale of the remaining timber on the Raub land and also agreed in writing that in the course of the trespass he had removed specified amounts of specified varieties of timber from the Welch land; that by virtue of these agreements Welch was given permission to enter upon the Raub land and remove the timber thereon; that Welch would credit that timber against the agreed amount taken by Raub and that Raub would settle with Welch in cash for the amount not compensated for by the timber taken by Welch. The Raub cross-complaint further alleged that the aforementioned settlement agreements had been fraudulently obtained and hence he had been damaged in the reasonable value of the timber Welch had removed from his property. Welch answered the Raub cross-complaint denying all of the allegations of fraud and damage and in turn cross-complained against Raub setting up the compromise agreements and alleging that pursuant thereto he had received from Raub timber of the value of $33,670.35, leaving the sum

of $20,855.04 still owing from Raub to him for which sum he prayed judgment.

Early in the trial the court suggested that the evidence being received did not accord with the issues as posed by the pleadings and suggested that it would be necessary that the pleadings be amended if the court was to be able to render a proper judgment. The parties continued to present evidence and at the close thereof the court reiterated its first suggestion, saying in effect that it did not want to take the case under submission and then render a decision not embraced in the pleadings. The court then requested that the parties stipulate that it could render findings and judgment based upon the factual situation as it had been developed by the evidence. This stipulation appears to have been accepted by the parties.

Relying on this stipulation, and hence without reference to the pleadings, the court found that Nutting had no interest in this controversy; that Welch notified Raub that he had trespassed on his land; that a meeting was held in August, 1951, between the parties; that at this meeting it was agreed that Raub would compensate Welch *for the actual timber taken by him* from the Welch land; that it was also agreed that Raub would allow Welch to enter his land and remove all the timber thereon; and that to the extent that the merchantable timber upon the Raub land did not take care of the total trespass committed, the shortage would be determined and Raub would make satisfactory arrangements to compensate Welch for the reasonable value of the deficiency; that at this meeting the three documents mentioned in the Raub cross-complaint were signed; that the written timber agreement was not in accord with the understanding and intent of the parties because it specified the quantity of timber taken by Raub as 1,475,940 board feet, while the actual quantity of timber taken in the trespass was not more than 1,194,000 board feet being divided into different amounts and varieties and grades than those specified in the written agreement; that Welch represented to Raub that he had made a thorough investigation and survey of the lands in question and that the amount of timber and variety thereof was as specified in the agreement; that Raub believed the said representations and made no independent investigation; that the representations as to the quantity, varieties, and grades were material and that they were false; that the court could not determine whether these statements by Welch were wilfully false or mistakenly made due to inaccurate information furnished him or for other reasons. The court

then proceeded to reform the agreements by making them conform to the original understanding. In other words, from the evidence before it, the court determined the actual amount of the trespass (number of board feet and varieties of timber)—the actual amount of timber to be credited to this figure as the result of Welch removing timber from Raub's land, and the actual money damage to Welch, since the timber received from Raub did not completely compensate for the trespass. After completing this computation the court held that Raub was still indebted to Welch in the sum of $334.62 and gave judgment for Welch in that sum. Welch appeals, Raub does not.

The first contention of Welch which we desire to treat is that the court's findings are not supported by the evidence. This contention is without merit.

Although these findings are somewhat ambiguous, they appear to be based on the theory that there was a mutual mistake of fact by the parties, and hence the written agreement should be reformed to conform to the precedent oral understanding. There can be no doubt that if there is evidence of mutual mistake, reformation is a proper remedy. (*Renshaw* v. *Happy Valley Water Co.*, 114 Cal.App.2d 521 [250 P.2d 612] ; Civ. Code, § 3399.)

 There is evidence in this record that there was an oral agreement that Raub would reimburse Welch for only the actual amount of timber taken from the Welch land, and although the evidence is conflicting, it supports the finding that the written agreement does not reflect this intention. It is true that Welch requested that Raub make an independent investigation of the accuracy of the survey and scaling as represented in the agreement and that Raub did not do so. However it is also true that as a lumberman Raub had every right to rely on the statements of Welch as they were compiled in a manner generally accepted by the industry and by people of accepted ability in this field. In view of these facts, we certainly cannot hold as a matter of law that Raub's failure to make an independent investigation amounted to such negligence as would bar his remedy of reformation. (See generally 42 Cal.Jur.2d, Reformation of Instruments, § 33.)

 Welch challenges the measure of damages adopted by the trial court saying, which is true, that the court allowed stumpage value only, although Welch presented testimony of the profit which he could have made had he proceeded to carry out the purpose for which the timber had been purchased

from Nutting, i.e., harvesting the timber, manufacturing the same into lumber, and selling it on the lumber market. It is noteworthy that no price was determined in any of the agreements entered into by the parties. In fact these agreements specified that after Welch had set off the timber removed from the Raub land against the amount of the trespass, the parties would then confer as to the amount of damages still uncompensated for. Since it is uncontradicted that Welch did buy the land and timber in order to sell it as a finished product, we believe that the court erred when it determined the damages on the basis of the stumpage value only. (*Kansas City Fibre Box Co.* v. *F. Burart Mfg. Co.*, 184 Ark. 704 [44 S.W.2d 325]; *Baily* v. *Hammonds*, 193 Ark. 633 [101 S.W.2d 785]; *McKenney* v. *Buffelen Mfg. Co.*, 232 F.2d 5; Rest., Torts, § 903.) In other words, the damages allowed should have included anticipated profit from the production and sale of lumber from the shortage as to each species not compensated for by lieu timber and logs, less such profit already received by Welch as to any species for which Raub had over-compensated.

The cause is remanded to the trial court for a determination of the damages in accordance with the rule set forth above. In all other respects the judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.